## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| )<br>IN RE AMERICAN BUSINESS )<br>FINANCIAL SERVICES INC. )<br>NOTEHOLDERS LITIGATION )<br>) | Master File No. 05-232 |

## MEMORANDUM IN SUPPORT OF LEAD
## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
## OF THE SETTLEMENT AGREEMENT AND EXHIBITS

/s/ TODD S. COLLINS
Todd S. Collins (TSC4390, I.D. No. 29405)
Elizabeth W. Fox (EWF6692, I.D. No. 33456)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-5715
tcollins@bm.net

THE NICHOLAS J. GUILIANO LAW FIRM
Nicholas J. Guiliano
1500 Walnut Street, Suite 1100
Philadelphia, PA 19102
Telephone:  215-413-8223
Facsimile:  215-413-8225
njgesq@aol.com

JACOB A. GOLDBERG, ESQ., LLC
Jacob A. Goldberg
P.O. Box 30132
Elkins Park, PA 19027
(215) 782-8235
jacobagoldberg@comcast.net

KLAFTER & OLSEN
Kurt B. Olsen
Jeffrey A. Klafter
2121 K St., N.W.
Suite 800
Washington, D.C.  20037
(202) 261-3553
ko@klafterolsen.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

THE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE SETTLEMENT NEGOTIATIONS AND SETTLEMENT . . . . . . . . . . . . . . . . . . . . 4

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     The Settlement Is Fair, Reasonable, And Adequate And Should
       Be Preliminarily Approved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.     The Complexity, Length and Duration of the Litigation . . . . . . . . . . . . . . . . 7

       B.     The Stage of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       C.     The Risks of Establishing Liability and Damages . . . . . . . . . . . . . . . . . . . . 9

       D.     The Ability of Defendants to Withstand a Greater
              Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       E.     The Range of Reasonableness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    The Notice and Proof of Claim Meet the Requirements of
       Due Process, Rule 23 and the PSLRA, and Should be Approved . . . . . . . . . . . . . . . 11

       A.     The Notice Meets the Requirements of Due Process . . . . . . . . . . . . . . . . . . 11

       B.     The Proposed Notice States Each Element Required
              by Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       C.     The Notice Complies with the PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

              1.     The Notice Provides the Settlement Amount . . . . . . . . . . . . . . . . . . . 14

              2.     The Notice Provides the Equivalent of the Average
                     Per Share Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

3.      The Notice Provides the Amount Class Counsel will
        Request for Fees and Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4.      The Notice Provides the Name, Address and Phone
        Number of Counsel  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5.      The Notice Explains the Reasons Why the Parties are
        Proposing The Settlement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6.      The Plan of Allocation is Fair  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.    The Proof of Claim and Release Form is Clear . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

malta441504-008.wpd

# TABLE OF AUTHORITIES

## CASES

*In re Cendant Corp. Litig.,*
  264 F. 3d 201 (3d Cir. 2001)...................................................................................................8, 9

*Diamond Chem Co. v. Akzo Nobel Chems. B.V.,*
  205 F.R.D. 33 (D.D.C. 2001)......................................................................................................11

*In re Diet Drugs Prods. Liab. Litig.,*
  93 Fed. Appx. (3d Cir. 2004).....................................................................................................11

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975).........................................................................................................7

*Gottlieb v. Wiles,*
  11 F.3d 1004 (10th Cir. 1993) ....................................................................................................11

*Gregory v. Correction Connection, Inc.,*
  1991 U.S. Dist. LEXIS 3659 (E.D. Pa. 1991) ............................................................................9

*Krangel v. Golden Rule Resources, Inc.,*
  194 F.R.D. 501 (E.D. Pa. 2000)...................................................................................................6

*Lenahan v. Sears, Roebuck and Co.*
  266 Fed. Appx. 114 (3d Cir. 2008)..............................................................................................7

*Mashburn v. Nat'l Healthcare, Inc.,*
  684 F. Supp. 660 (M.D. Ala. 1988) ...........................................................................................11

*Neuberger v. Shapiro,*
  110 F. Supp. 2d 373 (E.D. Pa. 2000) ...........................................................................................7

*In re PNC Finance Serv. Group, Inc., Sec Litig.,*
  440 F. Supp. 2d 421 (W.D. Pa. 2006)..........................................................................................9

*In re Prudential Ins. Co. Am. Sales Practice Litig.,*
  148 F.3d 283 (3d Cir. 1998).........................................................................................................6

*In re Ravisent Techn., Inc. Sec. Litig.,*
  2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) .......................................................7, 10

*In Re Relafen Antitrust Litig.,*
  231 F.R.D. 52 (D. Mass. 2005)..................................................................................................16

*In re Safety Components Int'l. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ..........................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ............................................................................11

### STATUTES

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................10

15 U.S.C.A. § 77a *et. seq* ..........................................................................................2

15 U.S.C.A. 77z-1(a)(7) ............................................................................................14

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE AMERICAN BUSINESS<br>FINANCIAL SERVICES INC.<br>NOTEHOLDERS LITIGATION | Master File No. 05-232 |

MEMORANDUM IN SUPPORT OF LEAD
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF THE SETTLEMENT AGREEMENT AND EXHIBITS

Lead Plaintiffs, on behalf of a Class of Noteholders[1] who bought Notes from American

Business Financial Services, Inc. ("American Business" or the "Company") during the period

between January 18, 2002 and January 21, 2005 ("Class Period"), have reached a Settlement

with Defendants, Directors and Officers of American Business.[2] Lead Plaintiffs on behalf of the

Class (the "Class") now request the Court:  (1) to grant Preliminary Approval of the Proposed

Settlement Agreement (Ex. 1), in accordance with the Proposed Preliminary Approval Order

(Ex. A); (2) to Approve the Notice (Ex. B), Proof of Claim Form (Ex. C), and Summary Notice

(Ex. D); (3) to direct that the Notice and Proof of Claim be mailed within ten  days from the

granting of the Preliminary Approval Order; (4) to direct that the Summary Notice be published

in *USA Today* and on *PR Newswire* one week after the Notice is mailed; (5) to authorize Lead

Plaintiffs' counsel to retain Heffler Radetich & Saitta, LLP as Claims Administrator; and (6) to

set a date for the Final Hearing.

At the Final Hearing, the Court will be asked to:  (1) finally approve the Settlement as

fair, reasonable and adequate; (2) decide on Class Counsel's Request for Attorneys Fees and

---

[1] Capitalized terms if not defined herein, are defined in the Settlement Agreement.
[2] The Defendants are Estate of Anthony J. Santilli, Deceased ("Santilli"), Albert W. Mandia
("Mandia"), Leonard Becker, Michael DeLuca, Harold E. Sussman, Jerome Miller, Warren
Palitz  and Jeffrey Steinberg, (collectively the "Noteholder Defendants").

Costs; (3) decide on the Request for Lead Plaintiffs' Expense Awards for reimbursement for out-of-pocket costs; (4) approve Plaintiffs' Plan of Allocation of the Net Settlement Amount; and (5) address any objections filed by Class Members, as set forth in the Order and Final Judgment attached as Exhibit E.

## BACKGROUND

Plaintiffs filed a putative Class Action on January 18, 2005 alleging, pursuant to Section 11 of the Securities Act of 1933, 15 U.S.C.A. § 77a *et. seq.*, that American Business and the signers of three separate Registration Statements had made material misstatements and omissions in those Statements concerning the financial condition of American Business and specifically, had misrepresented that American Business would be able to pay back the Notes with interest, when the Notes came to maturity.

American Business was a sub-prime mortgage company that borrowed money to fund mortgages and, at least through 2003, securitized and sold those mortgages, retaining the interest flow from the mortgages ("IO Strips") and the rights to service the mortgages. American Business sold Notes without any broker, at high interest rates, primarily through newspaper advertisement to obtain the cash it needed to operate its business.

The persons who bought the Notes were often unsophisticated investors, who wanted a simple investment with a high yield. In many cases, they were senior citizens and persons for whom English was not their native language. The Notes were unsecured, and could not be sold on the open market. At maturity, the Notes could be cashed in or rolled over for another term of the same number of years. Interest could be paid periodically to the Noteholder or be added to the principal amount of the Note.

malta441139                          2

During 2003 and 2004 American Business offered Noteholders a chance to exchange their Notes for one half the value of their Notes as secured Notes, backed by IO Strips and one half the value in American Business preferred stock. Both those who own unsecured Notes and those who own Secured Notes are Class Members, as long as they bought or rolled over their Notes after January 18, 2002.

Three days after Plaintiffs filed their suit, American Business declared bankruptcy first under Chapter 11, and later under Chapter 7. At the time of bankruptcy, American Business owed Noteholders over $500 million dollars in principal and interest on Notes.

## THE LITIGATION

On March 29, 2005, the Court designated John A. Malack, Virgil Magnon, Michael Rosati, S. S. Rajaram, M.D., Hayward Pediatrics, Inc. and Sabina Langdon as Lead Plaintiffs ("Lead Plaintiffs") and one of their counsel, Berger & Montague, P.C., as Lead Counsel.

On November 16, 2005, Lead Plaintiffs filed an Amended Complaint against the Defendants, in which American Business was not included as a defendant because of its bankruptcy, and Henry Munster (collectively with Malack, Magnon, Rosati, and Rajaram the "Noteholder Plaintiffs") was added as a named representative plaintiff (the Noteholder Plaintiffs and the Noteholder Defendants are herein referred to collectively as the "Parties" or the "Settling Parties").

Defendants filed a Motion to Dismiss and a subsequent Motion for Judgment on the Pleadings. The Court denied in part the Motion to Dismiss and denied the subsequent Motion for Judgment on the Pleadings as to the Section 11 cause of action on January 9, 2007, and July 25, 2007 respectively.

On October 3, 2007, the Court certified the Class.

On May 2, 2008, a Notice of Pendency of Class Action (the "Class Action Notice") was sent to all Class Members whose names and addresses were provided to Lead Counsel by George Miller, Chapter 7 Trustee of the bankruptcy estates of American Business (the "Trustee") and to those potential Class Members who had contacted Lead Counsel. Pursuant to the Class Action Notice, all Class Members who decided to exclude themselves were required to send their request for exclusion by June 16, 2008. Seventy-three possible members of the Class have chosen to exclude themselves from the Class. The Parties, however, have agreed to send these persons Notices of the Settlement and give them a chance to withdraw their exclusions.

After the American Business Bankruptcy was converted to Chapter 7, George Miller was appointed Trustee of the Bankruptcy Estate. The Trustee filed suit against Directors and Officers of American Business, many of whom were also Noteholder Defendants in this Action, as well as other defendants in the Philadelphia Court of Common Pleas. *Miller v. Santilli*, No. 1225, July Term, 2006, Court of Common Pleas, Philadelphia, Pennsylvania. That case was removed to this Court, but later remanded to the Court of Common Pleas. It is scheduled to go to trial before Judge Bernstein in April, 2009.

## THE SETTLEMENT NEGOTIATIONS AND SETTLEMENT

On June 10 and 11, 2008, Counsel for the Directors and Officers of American Business; Counsel for the insurance companies that had issued directors and officers insurance to the Company; Counsel for the Trustee and the Trustee; and Counsel for the Class of Noteholders and Lead Plaintiff Michael Rosati participated in a mediation before retired Federal Judge Daniel Weinstein.

From the beginning of the mediation, it was clear that the losses sustained by the Noteholders were far greater than the available insurance. Moreover, since the costs of defense

of both the Class claims and the Trustee claims was being paid by the very insurance policies that Lead Plaintiffs and the Class hoped to use to cover their losses, it was clear to the Class that any further litigation was self-defeating. Indeed, Defendants had already almost used up the five million dollar primary policy paying for their defense.

After two days of intense negotiation, Judge Weinstein announced that he believed the Parties had reached a tentative agreement whereby the Class and the Trustee would each be paid $16,767,500, to settle their respective cases against the Officers and Directors with the insurers paying $33,500,000, the Estate of Santilli, the former CEO of American Business paying $25,000 and Albert Mandia, the former CFO of American Business paying $15,000. The small amount of insurance money still left after these payments would be saved for any further defense expenses the Defendants could incur. Lead Plaintiffs understood that not all the insurers had fully signed off on the agreement, but the mediator believed that all the insurers would ultimately agree. The Proposed Settlement also included an agreement that the Defendants would cooperate both with the Class and the Trustee and give testimony and confirmative discovery in furtherance of the Class's case against BDO Seidman, LLP ("BDO") and the Trustees' litigation against numerous parties. The Defendants also agreed to produce Financial Disclosure Forms which confirm, in the case of Mandia and the Estate of Santilli, that they in fact could not make larger contributions to the Settlement. Finally, the Parties agreed that if more than 10% of Class Members opted out, Defendants would be able to terminate the Settlement, unless Class Counsel were able to persuade enough Noteholders to withdraw their exclusions.

During the time when the Trustee and the Class were preparing the Settlement papers, several of the defendants in the Trustee litigation filed claims for contribution or indemnification against some of the Defendant Directors and Officers in the Trustee litigation. Those Defendants

who were sued for contribution or indemnification questioned how they could agree to the Settlement, when they needed the insurance policies to fund their defense of these new claims.

In response to the problem of the new claims for indemnification and contribution, the Parties agreed on a compromise whereby the insurers, the Class and the Trustee would create a "D&Os' Future Defense Fund" of $880,000 with the insurers paying $540,000 and the Class and the Trustee each donating $170,000. If the D&Os' Future Defense Fund is not used up before the termination of the Trustee litigation, the Trustee and Class will get back equal shares of the amount available, up to $170,000 each. The $170,000 Holdback contributed by the Class is reflected in the Settlement Agreement where the "Paid Amount" is $16,597,500 rather than the $16,767,500 Settlement Amount. After that change was made, all insurers and Defendants finally agreed to the Settlement Agreement and its Exhibits on Friday, September 12, 2008, and all Parties had signed by Monday September 15, 2008.

## DISCUSSION

I.    **The Settlement Is Fair, Reasonable, And Adequate And Should Be Preliminarily Approved**

As a preliminary matter, the Third Circuit favors settlements of disputed claims. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 317 (3d Cir. 1998). This policy is particularly strong in complex class action litigation. *See, e.g., Krangel v. Golden Rule Resources, Inc.*, 194 F.R.D. 501, 504 (E.D. Pa. 2000) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"). Here the Settlement will conserve judicial resources by avoiding the probable need for the Court to review and decide on voluminous summary judgment motions – probably three such motions from defendants, and if those motions were not granted, Daubert and other pre trial

motions. The Settlement will also save judicial time by obviating the need to conduct a long,

document laden jury trial, with post-trial motions, most likely, and an appeal.

In the Third Circuit, the fairness of a settlement is determined by consideration of the

nine factors articulated in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975), which include:

"(1) the complexity, expense and likely duration of the litigation"; "(2) the reaction of the class

to the settlement"; "(3) the stage of the proceedings and the amount of discovery completed";

"(4) the risks of establishing liability"; "(5) the risks of establishing damages"; "(6) the risks of

maintaining the class action through the trial"; "(7) the ability of the defendants to withstand a

greater judgment"; "(8) the range of reasonableness of the settlement fund in light of the best

possible recovery"; and "(9) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation." *Lenahan v. Sears, Roebuck and Co.*, 266

Fed. Appx. 114, 121 (3d Cir. 2008) (citing *Girsh*, 521 F.2d at 157). Some of those factors are

also relevant to preliminary approval of a settlement.

### A.     The Complexity, Length and Duration of the Litigation

Courts in this Circuit have long held that the complexity, expense and likely duration of

the litigation in a complex securities class action weights in favor of approving a class action

settlement. *In re Ravisent Techn., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *24-25 (E.D.

Pa. Apr. 18, 2005) (upholding settlement where "[a]bsent a settlement, this action likely would

not be resolved for several additional years"); *see also Neuberger v. Shapiro*, 110 F. Supp. 2d

373, 378 (E.D. Pa. 2000) ("the prospect of complexity and additional costs encourages

settlement approval").

Here, the litigation is three and a half years old. Lead Plaintiffs had reviewed thousands

of documents, but had not yet begun depositions when settlement discussion began. Had the

case continued, as explained above, there would have been fifteen (15) or more depositions, thousands of documents marked as exhibits and vigorous motion practice. Because the Defendants held different positions at American Business, CEO, CFO and Board Members, respectively, there would likely have been separate summary judgment motions, some separate experts and three or four defense firms participating at trial. This process would have been extremely burdensome for the Court. Further, this process would have used up insurance money and lengthened the time the Class Members would have been forced to wait to get anything back on their Notes. This was especially important because many Class Members are elderly[3] often living on Social Security alone, since their "nest egg" had been invested in American Business Notes. Forcing them to wait another year would have been irresponsible.

**B.    The Stage of Proceedings**

This factor permits a court to determine whether plaintiffs have had access to sufficient material to evaluate their case and, on an informed basis, to assess the adequacy of the proposed Settlement in light of the case's strengths and weaknesses. *See In re Cendant Corp. Litig.*, 264 F. 3d 201, 235 (3d Cir. 2001) ("[This factor] captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.").

Here, the stage of proceedings is also a factor in favor of Settlement. The case was three and a half years old. It had survived a motion to dismiss, and a motion for judgment on the pleadings. The Class had been certified. Class Counsel had reviewed thousands of documents and were ready to start a five month period of intensive discovery, including numerous depositions and expert discovery. By settling at this stage, Counsel had made sufficient

---

[3] Lead Plaintiffs Rosati and Magnon are both over 80 years of age.

investigation to know the worth of the case and the risks, but had not yet entered the most

expensive phase of the litigation, which would have further depleted the amount available for

settlement.

### C.    The Risks of Establishing Liability and Damages

In securities class actions, the determination of liability is a complicated and uncertain

process, typically involving conflicting expert opinions. *In re PNC Finance Serv. Group, Inc.,*

*Sec Litig.*, 440 F. Supp. 2d 421, 434-35 (W.D. Pa. 2006).  The reaction of a jury to complex

expert testimony is highly unpredictable.  *Id.*  Thus, a jury trial is a risky enterprise.

In this case although damages were clear and easily established, liability may have been

less sure.  The outside directors would have claimed they had relied on the assurances of

management and the auditors.  *See, e.g., Gregory v. Correction Connection, Inc.*, 1991 U.S. Dist.

LEXIS 3659 at *54-55 (E.D. Pa. 1991).  Although there were "Red flags" that even a casual

Board Member should have recognized and reacted to, the misstatements in the financial

statements may have been too subtle for a jury to find that Board Members were liable.  The

Management Defendants, Santilli and Mandia, would have had a harder time escaping liability,

but with a jury there is always a risk.  The existence of that risk militates in favor of settlement.

### D.    The Ability of Defendants To Withstand a Greater Judgment

This *Girsh* factor addresses whether Defendants "could withstand a judgment for an

amount significantly greater than the [proposed] Settlement."  *Cendant*, 264 F. 3d at 240.

The Settlement, and the Trustee's Settlement with the Directors and Officers, used up

virtually all the available directors and officers insurance.  Santilli's estate and Mandia claimed

that they had little significant net worth and agreed to pay $25,000 and $10,000 respectively

from their own assets.  It is very unlikely that a large verdict would have squeezed any more out

of them.   As to the insurance, it was a wasting asset.  The directors and officers had already used up most of the primary policy in defense expenses, yet the most intense phase of discovery had not begun in either case.  The Class knew that every day of litigation would decrease the amount that they could collect, no matter how huge a verdict they won.  In a word, what the Class settled for, given the circumstances, was the most the Class could have gotten, no matter how skillful they were in the ongoing litigation.

### E.    The Range of Reasonableness

These two *Girsh* factors look at "how the settlement compares to the best and worst case scenarios" by "evaluating whether the settlement represents a good value for a weak case or a poor value for a strong case." *See Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *32; *see also In re Safety Components Int'l. Sec. Litig.*, 166 F. Supp. 2d 72, 92 (D.N.J. 2001) ("in conducting this evaluation, it is recognized 'that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding too large a settlement based on the court's view of the merits of the litigation'").

Although the verdict in this case could have been many times the Settlement Amount, it would have been uncollectible.  After a monumental battle, the insurance money would have been diminished, and Mandia and the Estate of Santilli would not have increased their assets.  This Settlement gives the Class the maximum amount available at the earliest possible time.

Thus, all of the relevant *Girsh* factors lead to the conclusion that this Settlement is fair, reasonable and adequate and should be preliminarily approved.

**II.     The Notice And Proof Of Claim Meet The Requirements Of Due Process, Rule 23 And The PSLRA, And Should Be Approved**

Courts have found that notice substantially equivalent to that provided in this Settlement constitute the "best notice practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B). *Diamond Chem Co. v. Akzo Nobel Chems. B.V.*, 205 F.R.D. 33, 34 (D.D.C. 2001). Trial courts are given substantial latitude to determine fair and expedient procedures. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 93 Fed. Appx. 338, 342 (3d Cir. 2004) ("Federal Rule of Civil Procedure 23(e) itself makes clear that determinations about settlement notices in class actions are within the discretion of the district court."); *see e.g., Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993) (finding the content and form of notices are left to the court's discretion).

**A.     The Notice Meets the Requirements of Due Process**

Rule 23 of the Federal Rules of Civil Procedure requires that Class members "who can be identified through reasonable effort" be given "the best notice that is practicable under the circumstances." Due process requires that in a class action, notice of the settlement and an opportunity to be heard must be given to absent class members. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D. Del. 2002) ("Before … approving a class settlement, the court must direct that notice of the proposed settlement be disseminated to class members. Fed. R. Civ. P. 23(c)(2) & 23(e)."); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("This Court is of the opinion that the notice given to members of the plaintiff class by publication and by mail, … complied with all the requirements of due process, all requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best practicable notice under the circumstances."). Here, the Claims Administrator will mail the Notice by first class mail, and publish the Summary Notice in *USA Today* and on the internet on

*PR Newswire.* Class Counsel believe that Class Members are more likely to see *USA Today* than the *Wall Street Journal*, or any local newspaper.

Moreover, the list of Class Members is accurate. At the time of the bankruptcy, American Business had complete lists of all Noteholders in electronic form, which the Trustee has made available to the Class and the Claims Administrator. The Claims Administrator mailed the May 2, 2008 Notice of Pendency of Class Action to the persons on this list as well as to persons who had called Berger & Montague, P.C. or had filed complaints. As a result of the May 2, 2008 mailing, the Claims Administrator has done research to find good addresses when the notices were returned, and has adjusted the list when Noteholders have reported changes of address. Thus, the list as it exists is as accurate as it could be, given the three-and-a-half years since it was last updated by American Business.[4] Thus, the proposed Notice meets due process requirements.

**B.    The Proposed Notice States Each Element Required by Rule 23**

Rule 23 requires that the Notice "clearly and concisely state in plain, easily understood language:

|       |                                                                                      |
|-------|--------------------------------------------------------------------------------------|
| (i)   | the nature of the action;                                                            |
| (ii)  | the definition of the Class certified;                                               |
| (iii) | the Class claims, issues, or defenses;                                               |
| (iv)  | that a Class Member may enter appearance through an attorney if the member so desires; |
| (v)   | that the Court will exclude from the Class any Member who requests exclusion;         |
| (vi)  | the time and manner for requesting exclusion;                                         |
| (vii) | the binding effect of a class judgment on members under Rule 23(c).                   |

This Notice contains every element required by Rule 23.

---

[4] Since Heffler Radetich & Saitta LLP handled the May 2, 2008 mailing of notice, it will be most efficient to appoint it as Claims Administrator for sending this Notice and processing these claims.

1.     The nature of the Action and the Class claims, and issues, i.e. that this is a Class action in which the Class claims there are material misrepresentations in the Registration Statements, are described on page 5 of the Notice, on page 10, under Question 2, "What Is This Lawsuit About?", and on page 11, Question 3, "Why Is This A Class Action?"

2.     The definition of the Class -- all Persons who bought Notes from American Business after January 18, 2002 and suffered damages -- is contained in the bold section at the top of the first page, in the first bullet point on the first page and in Question 3, "Why Is This A Class Action?" on page 11 of the Notice.

3.     The Notice explains that a Class Member who files an objection may enter an appearance through an attorney to argue the objection. *See* page 24, Question 16, "Do I Have A Lawyer In This Case? *See also* pages 29 and 30, Question 21, "When And Where Will The Court Decide Whether To Approve The Settlement?" Finally, on page 31, Question 22, "Do I have To Come To The Hearing?" and Question 23, "May I Speak At The Hearing?" both address this issue.

4.     The opportunity for a Class member to be excluded or to opt out and the time and manner for requesting exclusion is explained briefly in the chart on page 3 of the Notice.  It is explained more thoroughly in the section on pages 21-23, "Excluding Yourself From The Settlement", and is also further explained on page 29, Question 20, "What Is The Difference Between Objecting And Requesting Exclusion."

5.     The binding effect of the judgment on Class Members, which will result from the Settlement, is explained on page 20, Question 13, "What Am I Giving Up To Get A Payment And To Stay In The Class?"  It is also explained on page 32, Question 24, "What Happens If I Do Nothing At All?" and on page 35, Question 27, "If I Receive No Payments Will

I Be Bound By The Court's Final Order?" The Proof of Claim Form sets forth the legal terms of the Release Class Members must agree to unless they opt out.

      6.     Finally, Rule 23 requires that the Notice must deliver its message "clearly and concisely" and in plain, easily understood language. It is difficult to explain complex class action securities litigation and complicated settlements and releases in easily understood language. Class Counsel have tried to avoid "legalese" and to use plain words. They have used a question and answer format and have explained difficult concepts in several ways to maximize the Noteholders' comprehension. Class Counsel believe that the Notice meets the "plain, easily understood language requirement of Rule 23.

### C.     The Notice Complies with the PSLRA

The PSLRA, 15 U.S.C.A. 77z-1(a)(7),  requires that the Notice contain the amount of the Settlement and the average per share amount, the amount of fees and costs that will be sought by counsel, the name, address, and telephone number of representatives of Counsel who will be reasonably available to answer questions about the Notice and the reasons why the Parties are proposing the Settlement. This Notice complies with these requirements:

### 1.     The Notice Provides the Settlement Amount

The Notice provides the total amount of the Settlement, $16,767,500 in the first line. That amount is further explained in Question 9, "What Is The Settlement Amount" which explains the Holdback of $170,000 for the D&Os' Future Defense Fund.

### 2.     The Notice Provides the Equivalent of the Average Per Share Amount

Although the PSLRA requires that the Notice set forth the "average per share amount", that is impossible here, because each Note had a different value, depending on the amount invested by the Noteholder. Unlike shares, Notes did not fluctuate in value. Class Counsel

decided that the closest equivalent to the average per share amount was the percent that the Settlement Amount represents of the total amount owed to all Class Members as of the date of American Business's bankruptcy on January 21, 2005. In this case, the Settlement Amount represents about 2.5% of the amount American Business owes all Noteholders as shown at the second bullet point in the first page of the Notice.

### 3.  The Notice Provides the Amount Class Counsel will Request for Fees and Costs

The Notice specifies that Class Counsel will seek not more than 30% of the Settlement plus interest in fees and not more than $325,000 in expenses.  In addition to ordinary litigation expenses, this expense amount includes the cost of sending the May 2, 2002 Notice out to all Noteholders.  The fees and costs requested by Class Counsel are explained on page 2, and again on page 24 in Question 17, "How Will The Lawyers Be Paid"?, which explains the large amount of legal work and the investment in expenses by Class Counsel, and the risk of not being paid at all.

### 4.  The Notice Provides the Name, Address and Phone Number of Counsel

Page 5 of the Notice provides the names, and phone number of Lead Counsel, and the address and website of the Claims Administrator, counsel's representative.  As printed, the Notice and Proof of Claim will supply the Claims Administrator's 800 number and website on every page so that Class members have a variety of ways to get their questions answered.

### 5.  The Notice Explains the Reasons Why the Parties are Proposing the Settlement

On page 2, the Notice explains that this is a good settlement because it includes all the available money.  On page 11, Question 4, "Why is there a Settlement?" explains that it is

unlikely that any later settlement or verdict could be more favorable, and that the Settlement is fair, reasonable and adequate.

### 6.    The Plan of Allocation is Fair

The Plan of allocation is set forth on page 33, Question 25 of the Notice. It provides that each Class Member who sends in an acceptable Proof of Claim ("Authorized Claimant") will get his, her or its *pro rata* share of the Net Settlement Amount. The Recognized Loss will be based on the total amount American Business owed the Authorized Claimant at the time of the bankruptcy, for Notes bought or rolled over after January 18, 2002. No credit will be given for the preferred stock owned by the holders of Secured Notes.

Some Persons, who received payments on their Notes from American Business during the last three months before American Business's bankruptcy, were required to pay to the Trustee some of the amount received, since the payments those Noteholders received from American Business were a preference. In such cases, the amounts such Noteholders paid back to the Trustee will be their Payable Claim or part of their Payable Claim if they owned other Notes.

Class Counsel, with the agreement of Defendants, have decided not to pay any payable claims for less than $10.00. This will eliminate a huge amount of Claims Administrator time, costs for stamps, costs for cutting checks and the like, without a large sacrifice on the part of the Claimants. *See In Re Relafen Antitrust Litig.*, 231 F.R.D. 52, 64 (D. Mass. 2005) (stating "[t]his court chooses $10 as a minimum recognized claim amount required for a consumer to receive a check....").

Altogether, the Plan of Allocation is fair to all Noteholders.

## III.    The Proof of Claim And Release Form Is Clear

The Proof of Claim Form is designed to be easy to fill out and to sets forth clearly, the date by which the form must be mailed, the documents required and the places where signatures are required.  The chart on which the Noteholder must list his, her or its Notes is labeled using the same terminology as is used by American Business on its Statements, the last of which was dated January 21, 2005.  Although the release language in the Proof of Claim Form, which is required by Defendants, is not clear, concise or plain language, the meaning of the Release is explained in plain English in the Notice on page 20, Question 13 "What Am I Giving Up To Get A Payment And To Stay In The Class?"  Accordingly, the Proof of Claim Form is fair, reasonable and adequate.

### CONCLUSION

For the reasons explained above, the Settlement is fair, reasonable and adequate and should be preliminarily approved, in accordance with the Preliminary Approval order attached hereto.

Respectfully,


/s/ TODD S. COLLINS
Todd S. Collins (TSC4390, I.D. No. 29405)
Elizabeth W. Fox (EWF6692, I.D. No. 33456)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-5715
tcollins@bm.net

THE NICHOLAS J. GUILIANO LAW FIRM
Nicholas J. Guiliano
1500 Walnut Street, Suite 1100
Philadelphia, PA 19102
Telephone: 215-413-8223
Facsimile: 215-413-8225
njgesq@aol.com

JACOB A. GOLDBERG, ESQ., LLC
Jacob A. Goldberg
P.O. Box 30132
Elkins Park, PA 19027
(215) 782-8235
jacobagoldberg@comcast.net

KLAFTER & OLSEN
Kurt B. Olsen
Jeffrey A. Klafter
2121 K St., N.W.
Suite 800
Washington, D.C. 20037
(202) 261-3553
ko@klafterolsen.com