# EXHIBIT 1

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE AMERICAN BUSINESS FINANCIAL SERVICES INC. NOTEHOLDERS LITIGATION | ) ) ) ) ) )  Master File No. 05-232 |

### SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into this 12th day of September, 2008 (the "Execution Date") by and among Plaintiffs and Defendants, Estate of Anthony J. Santilli, Deceased ("Santilli"), Albert W. Mandia ("Mandia"), Leonard Becker ("Becker"), Michael DeLuca ("DeLuca"), Harold E. Sussman ("Sussman"), Jerome Miller ("Miller"), Warren Palitz ("Palitz") and Jeffrey Steinberg ("Steinberg") (collectively the "Noteholder Defendants"). Capitalized terms used herein and not otherwise defined have the meanings assigned to them in Section IV(1) hereof.

**I.    THE LITIGATION**

On January 18, 2005, a group of purchasers of notes, subordinated debt securities, subordinated money-market notes, and subordinated debentures issued by American Business Financial Services, Inc. ("American Business") filed a class action suit pursuant to, *inter alia*, Section 11 of the Securities Act of 1933, 15 U.S.C.A. § 77k, against the Noteholder Defendants and American Business in the United States District Court for the Eastern District of Pennsylvania (the "Court"), captioned *In re American Business Financial Services, Inc. Noteholders Litigation*, Master File No. 05-CV-232 (the "Action").

On January 21, 2005, American Business filed for bankruptcy.

On March 29, 2005, the Court designated John A. Malack ("Malack"), Virgil Magnon ("Magnon"), Michael Rosati ("Rosati"), S. S. Rajaram, M.D., Hayward Pediatrics, Inc. ("Rajaram") and Sabina Langdon as Lead Plaintiffs ("Lead Plaintiffs") and one of their counsel, Berger & Montague, P.C., as Lead Counsel ("Lead Counsel").

On November 16, 2005, Lead Plaintiffs filed an Amended Complaint against the Noteholder Defendants, in which American Business was not included as a defendant because of its bankruptcy, and Henry Munster ("Munster") (collectively with Malack, Magnon, Rosati, and Rajaram the "Noteholder Plaintiffs") was added as a named representative plaintiff (the Noteholder Plaintiffs and the Noteholder Defendants are herein referred to collectively as the "Parties" or the "Settling Parties").

The Noteholder Defendants filed a Motion to Dismiss and a subsequent Motion for Judgment on the Pleadings. The Court denied in part the Motion to Dismiss and denied the subsequent Motion for Judgment on the Pleadings as to the Section 11 cause of action on January 9, 2007, and July 25, 2007 respectively.

On October 3, 2007, the Court certified the Class.

On May 2, 2008, a Notice of Pendency of Class Action (the "Class Action Notice") was sent to all Class Members whose names and addresses were provided to Lead Counsel by George Miller, Chapter 7 Trustee of the bankruptcy estates of American Business (the "Trustee") and to those potential Class Members who had contacted Lead Counsel. Pursuant to the Class Action Notice, all Class Members who decided to exclude themselves were required to send their request for exclusion by June 16, 2008. Seventy-three possible members of the Class have chosen to exclude themselves from the Class.

On June 10 and 11, 2008, the Parties, the Trustee, and former officers and directors of American Business named as defendants in *Miller v. Santilli, et al.*, No. 001225, July Term, 2006, Court of Common Pleas, Philadelphia, Pennsylvania and *Miller v. Weber*, No. 002333, January Term, 2007, Court of Common Pleas, Philadelphia, Pennsylvania (collectively, the "Trustee's Action") participated in a mediation before retired Judge Daniel Weinstein. The officer and director defendants in the Trustee's Action are Beverly Santilli, Jeffrey M. Ruben ("Ruben"), Bradley Weber ("Weber"), Santilli, Mandia, Becker, DeLuca, and Sussman ("Trustee Defendants") (collectively with the Trustee, the "Trustee's Action Parties").

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Noteholder Defendants have expressly denied and continue to deny all allegations of any wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. The Noteholder Defendants have also denied and continue to deny, *inter alia*, any allegations of misrepresentations, non-disclosures or otherwise in the Registration Statements, and deny that the Class has suffered any damages, or that the Class was harmed by any conduct alleged in the Action or that could have been alleged therein.

Nonetheless, the Noteholder Defendants have concluded that further conduct of the Action would be protracted, expensive and distracting and that it is desirable that the Action be fully and finally settled. The Noteholder Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Action. The Noteholder Defendants have, therefore, determined that it is

malta440983                                    3

desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth herein.

The Parties agree to keep the terms of this settlement confidential until this Agreement is filed with the Court, and the Parties agree not to disparage publicly any of the Parties hereto. Each of the Parties shall have the opportunity to review and comment on any press release issued by any other Party or their Counsel regarding this settlement, other than the Summary Notice, Ex. D to this Agreement.

## III.    CLAIMS OF THE NOTEHOLDER PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Lead Plaintiffs allege that the Registration Statements, pursuant to which they and the Class of Noteholders bought their Notes, contained material misstatements and omissions about, *inter alia*, the ability of American Business to repay the Notes and the financial condition and results of American Business. The Noteholders bought Notes believing that they would be repaid, with interest, by American Business. The Noteholders were damaged when American Business failed to repay the Notes or the Notes with the promised interest.

Although Lead Plaintiffs believe their allegations are sound, and believe they could have prevailed at trial, they have concluded that it is in the best interests of the Class to settle before all of the available insurance is used to pay the Noteholder Defendants' attorney's fees and expenses. Lead Plaintiffs also considered the risks and expense of protracted litigation, and the apparent inability of the Defendants who were officers at American Business to pay out of their own funds any significant portion of the many millions of dollars lost by Class Members.

IV.    **TERMS OF SETTLEMENT AGREEMENT**

NOW THEREFORE, IT IS HEREBY AGREED, by and among the Noteholder Plaintiffs (on behalf of themselves and the Class Members), by and through their undersigned counsel of record, and the Noteholder Defendants that without any admission or concession on the part of Noteholder Plaintiffs of any lack of merit of the Action whatsoever, and without any admission or concession by the Noteholder Defendants of any liability or wrongdoing or lack of merit in the defenses to the Action whatsoever, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in consideration of the benefits flowing to the Settling Parties from the Settlement, that the Action and all Released Claims as against the Released Parties shall be finally and fully compromised, settled, released and dismissed with prejudice as to all Released Parties, upon and subject to the following terms and conditions.

1.    **Certain Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.1    "Action" means *In re American Business Financial Services, Inc. Noteholders Litigation*, Master File No. 05-CV-232, United States District Court for the Eastern District of Pennsylvania.

1.2    "American Business" means American Business Financial Services, Inc.

1.3    "Attorneys' Fees and Costs" shall mean the amount awarded by the Court for Plaintiffs' counsel's Attorneys' Fees and Costs.

1.4    "Authorized Claimant" means any Class Member who submits a timely and valid Proof of Claim to the Claims Administrator.

malta440983                    5

1.5    "BDO" means BDO Seidman, LLP.

1.6    "BDO Action" means *Malack et al v. BDO Seidman, LLP*, Master File No. 08-784, United States District Court for the Eastern District of Pennsylvania.

1.7    "Claimant" means any Noteholder who submits a Proof of Claim to the Claims Administrator.

1.8    "Claims Administrator" means Heffler Radetich & Saitta, LLP.

1.9    "Class" means all Persons who suffered damage as a result of their purchase of Notes from American Business between January 18, 2002 and January 20, 2005 pursuant to Registration Statements, including prospectuses included as exhibits and all supplements thereto, that became effective on or about October 16, 2001, October 3, 2002, and November 7, 2003, respectively, excluding the Noteholder Defendants in this Action.

1.10    "Class Member" means each member of the Class who has not timely and validly excluded himself, herself or itself from the Settlement in accordance with the Preliminary Approval Order.

1.11    "Effective Date" means the first day when all of the events and conditions specified in ¶ 11.1 (and its subparts) of this Agreement have occurred.

1.12    "Escrow Agent" means Todd S. Collins, Esq. of Berger & Montague, P.C.

1.13    "Final," in reference to a judgment or order means a judgment or order as to which the time for appeal or to seek permission to appeal therefrom has expired or, if appealed, such order or judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

1.14    "Final Order" means a Final order of the Court approving the Settlement and dismissing the Action with prejudice and without costs, substantially in the form of Exhibit E attached hereto.

1.15    "Financial Institution Defendants" shall mean the financial institutions that are defendants in the Trustee Action.

1.16    The "Holdback Amount" is the $170,000.00 held back from the Settlement Amount for the D&Os' Future Defense Fund as explained in paragraph 3.1 below.

1.17    "Lead Counsel" means Berger & Montague, P.C.

1.18    "Net Settlement Fund" shall mean the Settlement Amount, plus interest, less the Holdback Amount, the Notice and Administration Costs, the Attorneys' Fees and Costs, the amounts payable to the Noteholder Plaintiffs pursuant to 15 U.S.CA 77 z-1(a)(4) ("PSLRA") as awarded by the Court, ("Plaintiffs' Expense Awards") and Taxes on interest earned by the Settlement Amount, plus one half of any amounts left in the D&Os' Future Defense Fund  to a maximum of $170,000, subject to the terms of paragraph 3.2 below.

1.19    "Notes" means subordinated debt securities, subordinated money market notes, unsecured investment notes, subordinated money market notes or subordinated debentures issued by American Business.

1.20    "Notice" means the notice of class settlement in substantially the form of Exhibit B attached hereto.

1.21    "Paid Amount" is the $16,597,500 deposited in Citizens' Bank pursuant to paragraph 2.1.

1.22    "Person" means an individual, corporation, partnership, limited partnership, limited liability partnership (LLP), limited liability company (LLC), association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, and assignees.

1.23    "Plaintiffs' Counsel" means Lead Counsel and Plaintiffs' counsel who have worked under the direction of Lead Counsel.

1.24    "Plan of Allocation" shall mean the plan by which the Net Settlement Fund is distributed to the Authorized Claimants.

1.25    "Preliminary Approval Order" means the proposed order to be entered by the Court preliminarily approving the Settlement and directing notice thereof to the Class, substantially in the form of Exhibit A attached hereto.

1.26    "Proof of Claim" shall mean the document sent to the list of Noteholders provided by the Trustee with the Notice substantially in the form of Exhibit C attached hereto.

1.27    "Registration Statements" shall mean the Registration Statements of American Business, including prospectuses included as exhibits and all supplements thereto, that became effective on or about October 16, 2001, October 3, 2002 and November 7, 2003, respectively.

1.28    "Released Claims" collectively means and includes any and all claims or causes of action, debts, suits, rights of action, dues, expenses, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences,

fraudulent conveyances, fraudulent transfers, judgments, variances, executions, obligations, demands, rights, liabilities, damages, losses, fees, and costs of any kind, nature and/or description whatsoever, whether class or individual in nature, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not asserted, threatened, alleged or litigated, at law, admiralty, equity, or otherwise, including, without limitation, claims for contribution or indemnification, or for costs, expenses (including, without limitation, amounts paid in Settlement) and attorneys' fees (including, without limitation, costs, expenses and attorneys' fees incurred in connection with this Agreement and the Settlement of the Action), claims for negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, malpractice, misrepresentation, fraud, breach of fiduciary duty, or violations of any federal, state or local statutes, common law, or other laws, rules or regulations, that now exist or heretofore existed, that have been or could have been asserted or alleged in the Action, or any other forum against the Noteholder Defendants and any other former director or officer of American Business and/or any subsidiary thereof (collectively, with the Noteholder Defendants, the "ABFS D&Os") or any of them whether known or unknown, directly, indirectly, representatively, derivatively or in any other capacity, which arise out of, are based upon or relate to, or are in connection with (i) the claims asserted in the Action; (ii) the purchase, roll-over or other acquisition or retention of the Notes; or (iii) any of the facts, claims, transactions, events, occurrences, acts, disclosures, statements, representations, misrepresentations, omissions or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the subject matters referred to, set forth in, or the facts, causes of action,

malta440983                              9

counts or claims for relief which were, might have been, or could have been, asserted, alleged or litigated in the Action. Released Claims also include Unknown Claims.

1.29 "Released Parties" means each and all of the ABFS D&Os, their past or present advisors, agents, assigns, administrators, attorneys, banks or investment banks, co-insurers, consultants, employees, estates, executors, heirs, insurers, limited partners or partners, reinsurers, representatives, spouses (present and former), any entity in which any ABFS D&Os has a controlling interest, any member of an individual ABFS D&O's immediate family, or any trust of which any ABFS D&O is the settlor or which is for the benefit of any individual ABFS D&O and/or member(s) of his or her family, but not BDO.

1.30 "Settlement" means the settlement embodied by this Agreement.

1.31 "Settlement Amount" means the principal amount of $16,767,500.00.

1.32 "Settling Parties" means the Noteholder Plaintiffs, the Class Members, and the Noteholder Defendants.

1.33 "Summary Notice" means the summary notice of class settlement in substantially the form of Exhibit D attached hereto.

1.34 "Trustee Action" means *Miller v. Santilli, et al*, No. 001225, July Term, 2006, Court of Common Pleas, Philadelphia, Pennsylvania.

1.35 "Unknown Claims" means any Released Claim that any Noteholder Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, that if known by him, her or it, might have affected his, her or its decision to settle and release Released Parties, or might have

malta440983                                    10

affected his, her or its decision not to object to this Settlement or not to exclude himself, herself or itself from the Settlement.

2.    **Settlement Agreement**

2.1    The Noteholder Defendants shall pay or cause to be paid to the Noteholder Plaintiffs the Paid Amount, which is to be contributed by the insurers of the Noteholder Defendants except that Twelve Thousand Five Hundred Dollars ($12,500) of the total amount will be contributed by Santilli and Five Thousand Dollars ($5,000) will be contributed by Mandia.  The entire $16,597,500 will be paid into an interest-bearing escrow account maintained by the Escrow Agent at Citizens Bank on October 3, 2008, provided there occurs prior to that date the signing of the Preliminary Approval Order.

2.2    The Noteholder Defendants shall cooperate ("Cooperation") with the Noteholder Plaintiffs and the Class in connection with the Noteholder Plaintiffs' and the Class's pursuit of claims against other individuals or entities in existing and/or future litigation, including the BDO Action brought by the Noteholder Plaintiffs.  Cooperation shall include, but shall not necessarily be limited to: (1) reasonable requests for confirmatory discovery, including the provision of interviews and statements under oath (if requested), and the production of documents, (including electronic documents) that concern American Business on or before October 1, 2008 (and if requested, anytime thereafter); and (2) acceptance of service of subpoenas and appearance at depositions, hearings, and trials that concern American Business.  Such cooperation shall take place upon reasonable notice and at a time and place that is mutually convenient for the Parties and their counsel and will not unreasonably interfere with the normal business hours and responsibilities of the Noteholder Defendants who are employed.  The Noteholder

malta440983                                11

Plaintiffs, the Class and Lead Counsel agree that they will use their best efforts to coordinate requests for discovery from the Noteholder Defendants with any discovery requests from the Noteholder Defendants by any other Persons (including but not limited to BDO and the parties to the Trustee Action), in order to lessen the burdens on the Noteholder Defendants from responding to uncoordinated discovery requests in various proceedings. The Noteholder Plaintiffs, the Class and Lead Counsel agree to avoid seeking information that is unnecessary, cumulative or duplicative and agree otherwise to avoid imposing undue or unreasonable burden and expense on the Noteholder Defendants.

     2.3    On or before the Execution Date, the Noteholder Defendants shall provide to Lead Counsel a financial disclosure form provided by it/him/her (each, a "Financial Disclosure Form") and each of them hereby represents, warrants, covenants, and agrees as follows with respect to such form that: (a) the Financial Disclosure Form is complete and accurate in all material respects; (b) the Financial Disclosure Form identifies in all material respects the assets and liabilities of each Noteholder Defendant; and (c) the Financial Disclosure Form identifies in all material respects each transfer of any asset or item of property valued at more than $10,000.00 during the past four (4) years, including the name and address of the transferee(s), and the purpose of and consideration, if any, for the transfer(s). Lead Counsel acknowledges that the Financial Disclosure Forms submitted by the Noteholder Defendants contain personal financial information that would cause the Noteholder Defendants harm if disclosed. Lead Counsel shall maintain each Financial Disclosure Form as confidential. Lead Counsel will also promptly advise the Noteholder Defendants of any subpoena or other court process seeking to compel the

production of any Financial Disclosure Form or the information contained therein. Lead Counsel will also cooperate with the Noteholder Defendants' efforts to resist disclosure or to impose appropriate protections or limitations in connection therewith.

2.4     The Settlement shall be without costs to either side.

2.5     The obligations incurred pursuant to this Agreement shall be in full and final disposition of the Action and any and all Released Claims as against all Released Parties.

2.6     Upon the Effective Date of this Settlement, Noteholder Plaintiffs and Class Members on behalf of themselves and each of their heirs, executors, administrators, successors and assigns, and any persons they represent, shall, with respect to each and every Released Claim, release and forever discharge, and shall forever be enjoined from prosecuting, any Released Claims against any of the Released Parties.

3.     **The Settlement Consideration**

3.1     In the Trustee Action, the Financial Institution Defendants have asserted claims for contribution and/or indemnification against certain of the Trustee Defendants (who are also Noteholder Defendants) (the "D&O Contribution/Indemnification Claims") arising out of the claims asserted by the Trustee against the Financial Institution Defendants. The insurers for the Trustee Defendants have agreed to reimburse the Trustee Defendants for attorneys' fees and related litigation expenses incurred in connection with the ongoing litigation against other defendants including the defense of the D&O Contribution/Indemnification Claims in an aggregate amount not to exceed eight hundred eighty thousand dollars ($880,000.00) (the "D&Os' Future Defense Fund"). The first five hundred forty thousand dollars ($540,000.00) of the D&Os' Future

Defense Fund will be funded and contributed by the insurers and the remaining $340,000.00 of the D&Os' Future Defense Fund will be funded equally by the Trustee and the Class. The Class will have contributed their Holdback Amount by virtue of a $170,000 holdback against the Settlement Amount, accounted for in Section 2.1 above.

3.2    If the D&O Contribution/Indemnification Claims are terminated with prejudice or finally resolved before the exhaustion of the $880,000 D&Os' Future Defense Fund, one half of the remaining funds, but in an amount not to exceed $170,000, shall be refunded to the Escrow Agent for the Class to be deposited in the Settlement Fund or Net Settlement Fund within thirty (30) days of the termination with prejudice or final resolution of the D&O Contribution Indemnification Claims. For example, if there is $500,000 remaining in the D&Os' Future Defense Fund, after the resolution of the D&O Contribution Indemnification Claims, the Class will receive $170,000. Likewise, if there is $250,000 remaining in the D&Os' Future Defense Fund after the termination with prejudice or final resolution of the D&O Contribution/Indemnification Claims, the Class will receive $125,000.

3.3    The Escrow Agent shall have the right to challenge the reasonableness of the expenditure of funds from the D&Os' Future Defense Fund. To facilitate the Escrow Agent's right to challenge such expenditures, the Noteholder Defendants shall provide the Escrow Agent with periodic updates as to the expenditures from the D&Os' Future Defense Fund, providing reasonable specificity consistent with their obligations to maintain the attorney-client privilege and/or work product protection. If the Escrow Agent challenges any such expenditures, the Escrow Agent and the Noteholder Defendants shall negotiate in good faith to resolve the Escrow Agent's challenge. If

payment has been made for any challenged expenditure, that fact shall be given appropriate weight in determining whether the expenditure was reasonable. In the event that the Escrow Agent and the Noteholder Defendants are not able to resolve any challenges made by the Trustee, the dispute shall be presented to Retired Judge Daniel Weinstein for binding, non-appealable resolution, with each side presenting Judge Weinstein with the figure that it believes is appropriate, and Judge Weinstein shall pick one of the two figures, but not any other figure, and his fees and costs incurred in connection with such determination shall be charged against the side whose figure he did not select.

3.4     Within ten (10) business days after the signing of the Preliminary Approval Order, Lead Counsel may establish a "Notice and Administration Fund" and may deposit up to $100,000 from the Paid Amount in it. The Notice and Administration Fund may be used by Lead Counsel to pay costs and expenses reasonably and actually incurred in connection with providing the Notice to the Class, locating Class Members, soliciting Proofs of Claim, assisting with the filing of Proofs of Claim, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim forms and paying escrow fees and costs, including costs of filing federal income taxes on interest earned by the Paid Amount ("Notice and Administration Costs"). The Notice and Administration Fund may also be invested and earn interest.

3.5     Under no circumstances will the Noteholder Defendants be required to pay more than the Paid Amount pursuant to this Agreement and the Settlement set forth herein; however, any interest on the Paid Amount accrues to the benefit of the Class, provided the Final Order dismissing the Action becomes Final.

malta440983                          15

4. **The Escrow Agent**

4.1    The Escrow Agent shall invest any funds in the Paid Amount in excess of
One Hundred Thousand Dollars ($100,000) in instruments backed by the full faith and
credit of the United States Government or fully insured by the United States Government,
or any agency thereof, and shall reinvest the proceeds of those instruments as they mature
in similar instruments at their then-current market rates.  Any funds held by the Escrow
Agent in escrow hereunder in an amount of less than One Hundred Thousand Dollars
($100,000) shall be held in an interest-bearing bank account insured by the FDIC.  The
Escrow Agent shall bear all risks related to investment of the Paid Amount and shall
indemnify the Noteholder Defendants for the same.

4.2    All funds held by the Escrow Agent shall be deemed and considered to be
in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court
until such time as such funds shall be distributed or returned to the person(s) paying the
same pursuant to this Agreement and/or further order(s) of the Court.

4.3    The Escrow Agent shall not disburse the Paid Amount except as provided
in this Agreement, or by an order of the Court.

4.4    Subject to further order and/or directions as may be made by the Court, the
Escrow Agent is authorized to execute such transactions on behalf of the Class Members
as are consistent with the terms of this Agreement.

5.    **Taxes**

5.1    The Settling Parties and the Escrow Agent agree to treat the Paid Amount
as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §
1.468B-1.  The Escrow Agent shall timely make such elections as necessary or advisable

malta440983                              16

to carry out the provisions of this ¶ 5.1, including the "relation-back election" (as defined in Treas. Reg. ¶ 1.468B-1) back to the earlier permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. The Escrow Agent is responsible for timely and properly preparing and delivering the necessary documentation for signature by all necessary parties, and thereafter to make the appropriate filing.

5.2    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Paid Amount (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns as well as the election described in this paragraph shall be consistent with this paragraph and in all events shall reflect that all Taxes as defined in subsection 5.3 below (including any estimated Taxes, interest or penalties) on the income earned by the Paid Amount shall be paid out of the Paid Amount.

5.3    All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Paid Amount, including without limitation, any taxes or tax detriments that may be imposed upon the Noteholder Defendants or their counsel with respect to any income earned by the Paid Amount for any period during which the Paid Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of the terms of paragraphs 5.1 to 5.4, including without limitation, expenses of tax attorneys and/or accountants and mailing

malta440983                    17

and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph, (collectively, "Tax Expenses"), shall be paid out of the Notice and Administration Fund.  In all events neither the Noteholder Defendants nor any of them, nor their counsel, shall have any liability or responsibility for the Taxes or the Tax Expenses.  The Escrow Agent shall indemnify and hold harmless the Noteholder Defendants and their counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Paid Amount and shall timely be paid by the Escrow Agent out of the Paid Amount without prior order from the Court.  The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2 (1)(2)); neither the Noteholder Defendants, or any of them, nor their counsel is responsible therefore, nor shall they have any liability therefore.  The Settling Parties agree to cooperate with the Escrow Agent, each other and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

   5.4    In the event that the Effective Date does not occur, or the Agreement is not approved by the Court, or is terminated, cancelled, or fails to become effective for any reason, the Settling Parties agree that the Escrow Agent shall refund the Paid Amount plus any payment to the Escrow Agent for the Holdback Amount (including accrued interest), less Notice and Administration Costs already expended or incurred, to the

Noteholder Defendants and the Noteholder Defendants' insurers in proportion to their respective contributions to the Paid Amount and the refunded part of the Holdback Amount.

**6.**     **Preliminary Approval, Notice, Settlement Hearing and Final Approval**

6.1     Within thirty days after the Execution Date of the Agreement, the Noteholder Plaintiffs shall submit the Agreement together with its exhibits to the Court and shall submit to the Court a motion for entry of the Preliminary Approval Order, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Agreement, and final approval of the Notice, Proof of Claim and Release Form to be mailed to all Persons in the Class who can be identified with reasonable effort and to all former Class Members who previously opted out of the Class pursuant to the Notice dated May 2, 2008 and of the Summary Notice to be published substantially in the form attached hereto as Exhibits B, C and D. The Notice shall include the general terms of the Settlement set forth in this Agreement and shall set forth the procedure by which Noteholders may request to be excluded from the Settlement or may object to the Settlement or Attorneys' Fees requested. The date and time of the hearing for final approval of the Settlement ("Final Hearing") shall be included in the Notice.

6.2     The Noteholder Plaintiffs and the Noteholder Defendants shall request that the Court hold a hearing and finally approve the Settlement of the Action and the Final Order contemplated by this Agreement, after the Notice and Summary Notice have been mailed and published, respectively, and after the Noteholders have been given an opportunity to exclude themselves or to object to the Settlement, the Plan of Allocation,

malta440983                    19

the Request for Attorneys' Fees and Costs and the requests for Plaintiffs' Expense

Awards.

6.3    If the Settlement contemplated by this Agreement is approved by the

Court, counsel for the Settling Parties shall request that the Court enter the Final Order

approving the Settlement and entering Final Judgment dismissing the Action with

prejudice and without costs, substantially in the form to be attached hereto as Exhibit E.

In the event of an appeal of the Final Order, the Noteholder Plaintiffs, with the

cooperation of the Noteholder Defendants, shall use their best efforts to seek a dismissal

of the appeal or an affirmance of the Final Order.

7.    **Releases**

7.1    On the Effective Date, the Noteholder Plaintiffs and each Class Member,

on behalf of themselves, their successors and assigns, and any other Person claiming

(now or in the future) through or on behalf of them, and regardless of whether any such

Noteholder Plaintiff or Class Member ever seeks or obtains by any means, including,

without limitation, by submitting a Proof of Claim, any distribution from the Net

Settlement Fund, (i) fully, finally and forever release, relinquish, remise and discharge all

claims, including, without limitation, all Released Claims, against the Released Parties,

(ii) by operation of the Final Order, fully, finally, and forever release, relinquish, remise

and discharge the Released Parties from all claims, including, without limitation,

Released Claims, arising out of or in connection with the institution, prosecution, or

assertion of the Action, (iii) covenant not to threaten, demand, or sue the Released Parties

or any of them regarding any action or proceeding of any nature with respect to the

Released Claims, and (iv) are forever enjoined and barred from asserting the Released

Claims, against the Released Parties or any of them in any action or proceeding of any nature, regardless of whether any such Noteholder Plaintiffs and/or each Class Member ever seeks or obtains any distribution from the Net Settlement Fund, whether or not such Noteholder Plaintiffs and/or each Class Member executed and delivered a Proof of Claim, whether or not such Noteholder Plaintiffs and/or each Class Member have filed an objection to the Settlement or to their claim being rejected as provided in this Agreement, the proposed Plan of Allocation, or any application by Plaintiffs' Counsel for an award of Attorneys' Fees and Costs and whether or not the claims of such Noteholder Plaintiffs or Class Members have been approved or allowed or such objection has been overruled by the Court.

7.2    In accordance with the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77k(f)(2)(A) and 15 U.S.C. §78u-4(f)(7)(A)-(B) ("PSLRA"), and other statutory or common law rights, the Released Parties, and each of them, are hereby fully, finally and forever released and discharged from all claims for contribution, indemnity or other federal or state law causes of action that have been brought or may be brought by any Person based upon, relating to, arising out of, or in connection with the matters alleged in the Action.

7.3    The Noteholder Plaintiffs and each Class Member, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, and regardless of whether any such Noteholder Plaintiff or Class Member, ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim, any distribution from the Net Settlement Fund, shall not after the Effective Date seek to institute, maintain, prosecute or continue

malta440983                    21

to maintain or prosecute any suit, action or other proceeding, or collect from or proceed against the Released Parties or any of them, based on the Released Claims.

7.4    The Noteholder Defendants remise, release and discharge the Noteholder Plaintiffs and the Class Members and each of their estates, heirs, personal representatives, attorneys, accountants and insurers and the Class (the "Noteholder Releasees") of and from any and all actions, causes of action, claims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations and liabilities, whether known or unknown, contingent, liquidated or unliquidated, which the Noteholder Defendants have or may have against the Noteholder Releasees arising out of, based upon or relating to the Noteholder Defendants' transactions or dealings with and/or relationships to American Business, including but not limited to any such actions, causes of action, claims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations or liabilities arising out of, based upon, or relating to the Action or the BDO Action.

7.5    With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Final  Order shall have, expressly waived the provisions, rights and benefits of any statute, rule or provision which prohibits the release of Unknown Claims, including California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

7.6    A Settling Party may hereafter discover facts in addition to or different from those which he, she, it or they now know or believe to be true with respect to the subject matter of the Released Claims, but the Settling Parties, upon the Effective Date,

malta440983                          .  22

shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is alleged to be negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties shall be deemed by operation of the Final Order to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

7.7    Noteholder Plaintiffs and the Class are releasing only the Released Parties and no one else. The Noteholder Plaintiffs, on behalf of the Class, reserve and preserve in full all of their claims and actions against all other individuals and entities, including but not limited to the Noteholder Plaintiffs' claims in the BDO Action. The Noteholder Plaintiffs reserve the option and right to make claims against any and every other person or entity other than the Released Parties, including but not limited to BDO, and to assert that said other persons or entities and not the Noteholder Defendants are liable to the Noteholder Plaintiffs and the Class for the events, matters and damages alleged by the Action and the BDO Action and otherwise alleged.

8.    **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Settlement Amount**

8.1    On notice to the Class and appropriate orders of the Court, the Claims Administrator, subject to such supervision and direction of the Court and/or Lead Counsel, as may be necessary or as circumstances may require, shall administer and

malta440983                    23

calculate the Proofs of Claim submitted by Class Members and, upon the Effective Date and thereafter, shall oversee distribution of the Net Settlement Fund to Authorized Claimants. Subject to the terms of this Agreement and any order(s) of the Court, the Settlement Amount shall be applied as follows:

8.1.1   to pay Notice and Administration Costs;

8.1.2   to pay the Taxes;

8.1.3   to pay the Attorneys' Fees and Costs;

8.1.4   to pay Plaintiffs' Expenses Awards;

8.1.5   to contribute to the Holdback Amount, to the extent necessary, pursuant to paragraphs 3.1 and 3.2; and

8.1.6   to distribute the Net Settlement Fund pro rata to Authorized Claimants as allowed by the Plan of Allocation, this Agreement, or the Court.

8.2     Upon the Effective Date and thereafter, and in accordance with the terms of the Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

8.2.1   Each Claimant shall be required to submit to the Claims Administrator a completed valid Proof of Claim signed under penalty of perjury and supported by such documents as specified in the Proof of Claim, post-marked on or before the date set by the Court and stated in the Notice.

8.2.2   Except as otherwise ordered by the Court, all Class Members who fail to submit a valid Proof of Claim within such period as may be ordered by the

Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Settlement or this Agreement, but shall in all other respects be subject to and bound by the provisions of the Agreement, the releases contained herein, and the Final Order with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including without limitation, by submitting a Proof of Claim or any similar document, any distribution from the Net Settlement Fund.

8.2.3   The Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation as set forth in the Notice.  Any such Plan of Allocation is not a part of this Agreement.

8.3   Neither the Noteholder Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever to any Person, including, without limitation, to any Class Members, Claimants, or Noteholder Plaintiffs and Plaintiffs' Counsel with respect to the investment or distribution of the Paid Amount, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection with any such matters.

8.4   No Person shall have any claim against the Noteholder Plaintiffs, Plaintiffs' Counsel, or the Claims Administrator based on distributions made substantially in accordance with the Settlement and this Agreement, any Plan of Allocation, or orders of the Court.

8.5   It is understood and agreed by the Settling Parties that any Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to

any Authorized Claimant's claim, is not a part of the Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Agreement, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Agreement or affect the finality of the Court's Final Order approving the Agreement and the Settlement herein, or any other orders entered pursuant to the Agreement.

8.6     Each Proof of Claim shall be submitted to the Claims Administrator who shall determine, in accordance with this Agreement and order of the Court, the extent, if any, to which each claim shall be allowed, subject to appeal to the Court.

8.7     Proofs of Claim that do not meet the filing requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant submitting such claim in order to attempt to remedy curable deficiencies in the Proof of Claim submitted. The Claims Administrator shall notify in a timely fashion, and in writing, all Claimants whose Proofs of Claim the Administrator proposes to reject in whole or in part, setting forth the reasons thereof, and shall indicate in such notice that the Claimant whose claims are to be rejected has the right to review by the Court if such Claimant so desires and complies with the requirement of ¶ 8.8 below.

8.8     If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required by ¶ 8.7 above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's ground for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, the Claimant

malta440983                    26

shall thereafter present the request for review to the Court. Class Members involved in such a dispute whose rejection is ultimately upheld by the Court shall (i) be forever barred from receiving any payments pursuant to this Agreement and the Settlement set forth herein, but shall in all respects be subject to and bound by this Agreement and the Settlement, including the releases provided for in this Agreement, the Proof of Claim, and the Final Order; (ii) be conclusively deemed to have fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties; (iii) be conclusively deemed to have and by operation of the Final Order shall have fully, finally, and forever released, relinquished, and discharged the Released Parties from all claims, including without limitation, Released Claims arising out of or in connection with the institution, prosecution, or assertion of the Action or the Released Claims; (iv) be conclusively deemed to have covenanted not to sue any Released Parties in any action or proceeding of any nature with respect to the Released Claims; and (v) forever be enjoined and barred from asserting the Released Claims against any of the Released Parties in any action or proceeding of any nature, whether or not such Class Members have filed an objection to the Settlement, the proposed Plan of Allocation, or any application by Plaintiffs' Counsel for an award of Attorneys' Fees and Costs or for Plaintiffs' Expense Awards, and whether or not the claims of such Class Members have been approved or allowed, or such objections have been overruled by the Court.

8.9    Payment to Authorized Claimants pursuant to this Agreement shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall in all respects be subject to and bound by this

Agreement and the Settlement, including the releases provided for in this Agreement, the Proof of Claim, and the Final Order and shall (i) be conclusively deemed to have fully, finally and forever released, relinquished, and discharged all Released Claims against the Noteholder Defendants (ii) be conclusively deemed to have and by operation of the Final Order shall have fully, finally, and forever released, relinquished, and discharged the Noteholder Defendants from all claims (including, without limitation, the Released Claims) arising out of or in connection with the institution, prosecution, or assertion of the Action or the Released Claims; (iii) be conclusively deemed to have covenanted not to sue the Noteholder Defendants in any action or proceeding of any nature with respect to the Released Claims; and (iv) forever be enjoined and barred from asserting the Released Claims against the Noteholder Defendants or any of them in any action or proceeding of any nature, whether or not such Class Members have executed and delivered a Proof of Claim, whether or not such Class Members participated in the Net Settlement Fund, and whether or not such Class Members have filed an objection to the Settlement or to their claims being rejected as provided therein, the proposed Plan of Allocation, or any application by Plaintiffs' Counsel for an award of attorneys' fees and expenses and costs and whether or not the claims of such Class Members have been approved or allowed or such objection has been overruled by the Court.

8.10   The Noteholder Plaintiffs, through Lead Counsel, hereby agree not to opt out or object to this Agreement or entry of the Preliminary Approval Order or Final Order.

9.    **Plaintiffs' Counsel's Fees and Costs and Plaintiffs' Expense Awards**

9.1    Plaintiffs' Counsel may, upon such notice to the Class as may be required, submit an application or applications (the "Fees and Costs Application") for distributions to them from the Paid Amount as appropriate, for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Action; plus (c) any interest on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Paid Amount, as appropriate, as may be awarded by the Court; plus (d) any Plaintiffs' Expense Awards as may be awarded by the Court.

9.2    The Attorneys' Fees and Costs shall be paid to Plaintiffs' Counsel from the Paid Amount, as ordered, immediately after the Court executes an order awarding such fees and expenses.  In the event that the Effective Date does not occur, or the judgment or the order awarding Attorneys' Fees and Costs is reversed or modified, or the Agreement is cancelled or terminated for any other reason, and in the event that the Attorneys' Fees and Costs has been paid to any extent, then Plaintiffs' Counsel shall within five (5) business days from receiving notice from Noteholder Defendants' counsel or from a court of appropriate jurisdiction, refund the Attorneys' Fees and Costs previously paid to them from the Paid Amount plus interest thereon at the same rate as earned on the Paid Amount in an amount consistent with such reversal or modification. Plaintiffs' Counsel, as a condition of receiving such Attorneys' Fees and Costs, on behalf of themselves and each partner and/or shareholder of them, agree that the law firms and their partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

malta440983                      29

9.3     The procedure for, and the allowance or disallowance by the Court of, the Fees and Costs Application are not part of the Settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Agreement. Any order or proceedings relating to the Fees and Costs Application, or any appeal from any Attorneys' Fees and Costs award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Agreement, or affect or delay the finality of the Final Order and the Settlement of the Action as set forth herein.

9.4     The Noteholder Defendants and their counsel, or any of them, shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Plaintiffs' Counsel pursuant to the Fees and Costs Application.

9.5     The Noteholder Defendants and their counsel, or any of them, shall have no responsibility for, and no liability whatsoever with respect to, the allocation of the Attorneys' Fees and Costs among Plaintiffs' Counsel, and/or any other Person who may assert some claim thereto, or any Fees and Costs Award, or Plaintiffs' Expense Award that the Court may make in the Action.

**10.     Termination of Settlement**

10.1     At least five (5) days before the date set for the Final Hearing, Lead Counsel shall provide to the Noteholder Defendants' Counsel a list of those who have timely opted-out or excluded themselves from the Settlement (the "Opt-Out List"). As soon as practicable, but at least three (3) days before the Final Hearing, the Parties' counsel shall confer for the purpose of calculating the number of Persons in the Class who have timely excluded themselves from the Settlement. The Noteholder Defendants

malta440983                          30

shall have the option to terminate the Settlement if they reasonably determine that requests for exclusion from the Settlement have been made by Persons in the Class representing more than ten percent (10%) of the total number of Persons in the Class.

10.2    If the Noteholder Defendants elect to exercise the option set forth in ¶ 10.1 hereof, written notice of such election must be provided to Plaintiffs' Counsel and filed with the Court at least three (3) days prior to the Final Hearing.  Such notice may be served by hand delivery, e-mail or fax, with confirmation by telephone to Lead Counsel. The Noteholder Defendants may withdraw their election by providing written notice of such withdrawal, by hand delivery, e-mail or fax with telephone confirmation to Lead Counsel no later than 5:00 p.m. Eastern Time on the day prior to the Final Hearing, or by such later date as the Parties agree in writing.

10.3    If the Noteholder Defendants elect to terminate the Agreement pursuant to ¶ 10.1 hereof, Plaintiffs' Counsel may review the validity of any request for exclusion from the Settlement and may attempt to cause retraction or withdrawal of any request for exclusion.  No Noteholder Defendant or Released Party shall in any way interfere with, obstruct or seek to enjoin efforts by Plaintiffs' Counsel to seek to have those Persons who requested exclusion to withdraw their requests for exclusion.  If, by the day before the Final Hearing (or a later date agreed upon in writing), Plaintiffs' Counsel are successful in reducing the number of Persons who requested exclusion from the Class to a number which is within the limit permitting the Noteholder Defendants to terminate the Agreement, then any termination of the Agreement by the Noteholder Defendants shall automatically be deemed null and void.  In that event, Plaintiffs' Counsel shall serve on counsel for the Noteholder Defendants, by hand delivery, e-mail or fax, a statement

identifying the Persons in the Class who have withdrawn their requests for exclusion, or Persons who requested exclusion but were not in the Class.

10.4    If the Noteholder Defendants elect to terminate the Agreement in accordance with ¶ 10.1 and such termination is not nullified in accordance with ¶10.3, the Agreement shall be terminated and deemed null and void, and the provisions of ¶11.4 shall apply.

11.    **Conditions of Settlement, Effective Date, Effect of Disapproval, Cancellation or Termination**

11.1    The Effective Date of the Agreement, at which time this Agreement shall become final, shall be conditioned on the occurrence of all of the following events:

11.1.1  The Noteholder Defendants shall have timely transferred or caused to be timely transferred the Paid Amount to the Escrow Agent;

11.1.2  The Noteholder Defendants have not exercised their right to terminate the Agreement;

11.1.3  The settlement of the Trustee Action has been finally approved by Final Order of the Bankruptcy Court in the American Business Bankruptcy Litigation;

11.1.4  The Final Order has been entered by the Court without any changes not acceptable to the Parties; and

11.1.5  The Final Order has become Final.

11.2    Upon occurrence of all of the events referenced in ¶ 11.1 (and its subparts), above, any and all remaining interest or right of the Noteholder Defendants in or to the Settlement Amount, other than the amount in the D&Os' Future Defense Fund, if any, shall be absolutely and forever extinguished.

malta440983                        32

11.3    If all of the conditions specified in ¶ 11.1 (and its subparts) are not met, then the Agreement shall be cancelled and terminated, subject to and in accordance with ¶¶ 11.4 below, unless Lead Counsel and counsel for the Noteholder Defendants mutually agree in writing to proceed with the Agreement.

11.4    Unless otherwise ordered by the Court, in the event that the Agreement should terminate, or be cancelled, or otherwise fail to become effective for any reason, including without limitation, in the event that the order approving the Settlement and dismissing the Action does not become Final, then within ten (10) business days after written notification of such event is sent by counsel for the Noteholder Defendants or by Plaintiffs' Counsel to the Escrow Agent, the Paid Amount plus any payment to the Escrow Agent from the Holdback Amount, together with all interest accrued thereon, except for amounts already incurred or expended for Notice and Administration, Costs and Taxes, shall be refunded to the Noteholder Defendants and the Noteholder Defendants' insurers in proportion to their respective contributions to the Paid Amount and Holdback Amount. In addition, (i) the Settling Parties shall be restored to their respective positions in the Action as of June 12, 2008, with all of their respective claims and defenses, preserved as they existed on that date; (ii) the terms and provisions of the Agreement shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Action or in any other action or proceeding for any purpose, (iii) any judgment or order entered by any court in accordance with the terms of the Agreement shall be treated as vacated, nunc pro tunc.

11.5    While retaining their right to deny that the claims advanced in the Action were meritorious, the Noteholder Defendants in any statement made to any media representative (whether or not for attribution) will not deny that the Action was filed in good faith and is being settled voluntarily after consultation with competent legal counsel. The Settling Parties agree to keep the terms of the settlement confidential until this Agreement is filed with the Court, and the Settling Parties agree not to disparage publicly any of the Parties to the Action. Each of the Parties shall have the opportunity to review and comment upon any press release issued by any other Party regarding the Settlement. The Final Order will contain a statement that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

**12.    Miscellaneous Provisions**

12.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement.

12.2    The Settling Parties intend this Settlement to be a final and complete resolution of all Released Claims between them with respect to the Action. The Noteholder Defendants do not admit any liability to any Person, nor do the Noteholder Defendants admit any wrongdoing or liability, however described, including without limitation, any violations of federal or state securities laws, gross negligence or negligence and the Noteholder Defendants expressly deny any such wrongdoing or liability. Nothing herein contained shall constitute an adjudication or finding on the

merits as to the claims of any party hereto, and shall not be deemed to be, intended to be or construed as an admission of liability, in any way on the part of any party hereto, or any evidence of the truth of any fact alleged or the validity of any claims that have been or could be asserted in the Action.  All Parties expressly deny any liability for any and all claims of any nature whatsoever; nor shall anything herein contained constitute an acknowledgment of fact, allegation or claim that has been or could have been made, nor shall any third party derive any benefit whatsoever from the statements made within this Agreement.  Nor shall this Agreement nor any negotiations or proceedings connected with it be construed, offered or received in evidence in any action or proceeding of any kind whether as an admission or concession of any liability or wrongdoing or otherwise by any party hereto except as may be necessary to consummate, defend or enforce this Agreement.

12.3    Neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Parties; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (c) shall constitute an adjudication or finding on the merits as to the claims of any Party and shall not be deemed to be, intended to be or construed as an admission of liability, in any way on the part of any Party or any evidence of the truth of any fact alleged or the validity of any claims that have been or could be asserted in the Action.  All Parties expressly deny any liability for any and all claims of any nature

malta440983                              35

whatsoever; nor shall anything herein contained constitute an acknowledgment of fact, allegation or claim that has been or could have been made, nor shall any third party derive any benefit whatsoever from the statements made within this Agreement; nor (d) shall be construed against Noteholder Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial. The Noteholder Defendants may file the Agreement and/or the Final Order in any action that may be brought against them in order to support a defense or counter claim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.4    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

12.5    All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

12.6    The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

12.7    The Agreement and the Exhibits attached hereto constitute the entire agreement between the Settling Parties and no representation, warranties or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

12.8    Plaintiffs' Counsel, on behalf of the Class, are expressly authorized by the Noteholder Plaintiffs to take all appropriate action required or permitted to be taken by or

on behalf of the Class pursuant to the Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Agreement on behalf of the Class that they deem appropriate.

12.9    Each counsel or other Person executing the Agreement or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

12.10   The Agreement may be executed by facsimile or PDF and in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to the Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

12.11   The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

12.12   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement.

12.13   The Agreement and the Exhibits attached hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the Commonwealth of Pennsylvania, and the rights and obligations of the Parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Pennsylvania without giving effect to that State's choice of law principles.

12.14   All notices, requests, claims, demands, and other communications under this Agreement shall be in writing, and shall be given or made (and shall be deemed to

malta440983                          37

have been duly given or made upon receipt) by delivery in person, by registered or

certified mail (postage prepaid, return receipt requested), by facsimile, by e-mail

followed by first-class mail, or by Federal Express or similar overnight courier to the

respective parties at the following addresses (or at such address for a party as shall be

specified in a notice given in accordance with this paragraph).

(a)    If to Plaintiffs:

BERGER & MONTAGUE, P.C.
Todd S. Collins
Elizabeth W. Fox
Neil F. Mara
1622 Locust Street
Philadelphia, PA 19103
Tel:    (215) 875-3000
Fax:    (215) 875-4604

(b)    If to Leonard Becker, Michael DeLuca, Harold Sussman, Jerome
Miller, Warren Palitz or Jeffrey Steinberg:

MORGAN, LEWIS & BOCKIUS LLP
Marc J. Sonnenfeld, Esq.
1701 Market Street
Philadelphia, PA. 19103-2921
Tel:    (215) 963-5000
Fax:    (215) 963-5001

(c)    If to Albert W. Mandia:

CONRAD O'BRIEN GELLMAN & ROHN, P.C.
Nancy J. Gellman, Esq.
1515 Market Street
Sixteenth Floor
Philadelphia, PA. 19102-1916
Tel:    (215) 864-8065
Fax:    (215) 864-0065

(d)    If to the Estate of Anthony J. Santilli:

BALLARD SPAHR ANDREWS & INGERSOLL
Vincent J. Marriott, III Esq.
1735 Market Street

malta440983                                38

51st Floor
Philadelphia, PA. 19013
Tel:    (215) 864-8236
Fax:    (215) 864-9762

**IN WITNESS WHEREOF**, the Parties hereto have caused the Agreement to be

executed, by themselves or their duly authorized attorneys, dated as of the Execution

Date referred to above.

*Todd S. Collins (EWP)*
_____
Todd Collins, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103

*On behalf of Plaintiffs and the Class*

_____
Leonard Becker,

_____
Michael DeLuca

_____
Harold Sussman

_____
Jerome Miller

_____
Warren Palitz

malta440983                    39

(d)     If to the Estate of Anthony J. Santilli:

BALLARD SPAHR ANDREWS & INGERSOLL
Vincent J. Marriott, III Esq.
1735 Market Street
51ˢᵗ Floor
Philadelphia, PA. 19013
Tel:    (215) 864-8236
Fax:    (215) 864-9762

**IN WITNESS WHEREOF**, the Parties hereto have caused the Agreement to be executed, by themselves or their duty authorized attorneys, dated as of the Execution Date referred to above.

_____
Todd Collins, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103
*On behalf of Plaintiffs and the Class*

_____
Leonard Becker,

_____
Michael DeLuca

_____
Harold Sussman

_____
Jerome Miller

_____
Warren Palitz

malta440983                    39

(d)    If to the Estate of Anthony J. Santilli:

BALLARD SPAHR ANDREWS & INGERSOLL
Vincent J. Marriott, III Esq.
1735 Market Street
51st Floor
Philadelphia, PA. 19013
Tel:    (215) 864-8236
Fax:    (215) 864-9762

**IN WITNESS WHEREOF**, the Parties hereto have caused the Agreement to be executed, by themselves or their duly authorized attorneys, dated as of the Execution Date referred to above.

_____
Todd Collins, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103

*On behalf of Plaintiffs and the Class*

_____
Leonard Becker,

_____
Michael DeLuca

_____
Harold Sussman

_____
Jerome Miller

_____
Warren Palitz

malta440983                    39

(d)     If to the Estate of Anthony J. Santilli:

BALLARD SPAHR ANDREWS & INGERSOLL
Vincent J. Marriott, III Esq.
1735 Market Street
51st Floor
Philadelphia, PA. 19013
Tel:    (215) 864-8236
Fax:    (215) 864-9762

**IN WITNESS WHEREOF**, the Parties hereto have caused the Agreement to be

executed, by themselves or their duty authorized attorneys, dated as of the Execution

Date referred to above.

---

Todd Collins, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103

*On behalf of Plaintiffs and the Class*

---

Leonard Becker,

---

Michael DeLuca

---

Harold Sussman

---

Jerome Miller

---

Warren Palitz

malta440983                           30

(d)    If to the Estate of Anthony J. Santilli:

BALLARD SPAHR ANDREWS & INGERSOLL
Vincent J. Marriott, III Esq.
1735 Market Street
51st Floor
Philadelphia, PA. 19013
Tel:    (215) 864-8236
Fax:    (215) 864-9762

**IN WITNESS WHEREOF**, the Parties hereto have caused the Agreement to be

executed, by themselves or their duty authorized attorneys, dated as of the Execution

Date referred to above.

_____
Todd Collins, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103

*On behalf of Plaintiffs and the Class*

_____
Leonard Becker,

_____
Michael DeLuca

_____
Harold Sussman

_____
Jerome Miller

_____
Warren Palitz

malta440983                    39

(d)    If to the Estate of Anthony J. Santilli:

BALLARD SPAHR ANDREWS & INGERSOLL
Vincent J. Marriott, III Esq.
1735 Market Street
51st Floor
Philadelphia, PA. 19013
Tel:    (215) 864-8236
Fax:    (215) 864-9762

**IN WITNESS WHEREOF**, the Parties hereto have caused the Agreement to be executed, by themselves or their duly authorized attorneys, dated as of the Execution Date referred to above.

---
Todd Collins, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103

*On behalf of Plaintiffs and the Class*

---
Leonard Becker,


---
Michael DeLuca


---
Harold Sussman


---
Jerome Miller


---
Warren Palitz

malta440983                 39

_____
Jeffrey Steinberg

_____
Albert W. Mandia

_____
*On behalf of the Estate of Anthony J. Santilli*

_____
Jeffrey Steinberg


*Albert W. Mandia*
_____
Albert W. Mandia


_____
*On behalf of the Estate of Anthony J. Santilli*

_____
Jeffrey Steinberg

_____
Albert W. Mandia

_Beverly Bartlett_ on Behalf of the Estate of
On behalf of the Estate of Anthony J. Santilli

_Anthony J. Bartlett_

malta440983                    40

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE AMERICAN BUSINESS FINANCIAL SERVICES INC. NOTEHOLDERS LITIGATION | Master File No. 05-232 |

## PRELIMINARY APPROVAL ORDER

WHEREAS, the above-captioned action (the "Action") has been pending since January 18, 2005;

WHEREAS, by Order dated October 3, 2007, the Court certified a class consisting of all persons who suffered damage as a result of their purchase of Notes from American Business Financial Services Inc. ("American Business") between January 18, 2002 and January 20, 2005, pursuant to Registration Statements, including prospectuses included as exhibits and all supplements thereto, that became effective on or about October 16, 2001, October 3, 2002, and November 7, 2003 respectively (the "Class"), and

WHEREAS, Plaintiffs John A. Malack, Virgil Magnon, Michael Rosati, S. S. Rajaram, M.D., Hayward Pediatrics, Inc., and Henry Munster (collectively, "Noteholder Plaintiffs"), on behalf of the Class, and Defendants the Estate of Anthony J. Santilli, Albert W. Mandia, Leonard Becker, Michael DeLuca, Harold E. Sussman, Jerome Miller, Warren Palitz, and Jeffrey Steinberg, (collectively, "Defendants"), having made application, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order preliminarily approving the proposed settlement (the "Settlement") of this Action in accordance with the Settlement Agreement dated September 12, 2008 (the "Settlement

1

Agreement"), which, together with the exhibits annexed thereto, sets forth the terms and conditions for the Settlement, and the Court having read and considered the Settlement Agreement and the exhibits annexed thereto;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that

1.     The definitions in the Settlement Agreement are incorporated herein.

2.     The Settlement, as set forth in the Settlement Agreement, is preliminarily approved as fair, reasonable and adequate.

3.     The Final Hearing shall be held before this Court on _____, 2008, at ____ in Courtroom ___, United States Courthouse, 601 Market Street, Philadelphia, PA 19106, to determine whether the proposed Settlement of the Action, on the terms and conditions provided for in the Settlement Agreement, is fair, reasonable and adequate and should be finally approved by the Court; to determine whether a Judgment as provided in the Settlement Agreement should be entered herein; to determine whether the Plan of Allocation of the Net Settlement Fund as set forth in the Notice should be approved; to determine the amount of Attorneys' Fees and Costs that should be awarded to Plaintiffs' Counsel; to determine whether to allow Noteholder Plaintiffs reimbursement of reasonable, out-of-pocket costs and expenses they incurred in connection with representation of the Class; and to determine whether the Class Members' objections, if any, have merit.  The Court may adjourn the Final Hearing and later reconvene it without further notice to Members of the Class.

4.     The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release Form (the "Proof of Claim") including the Substitute W-9 Form, and the Summary Notice (the

"Summary Notice"), attached as Exhibits B, C and D to the Settlement Agreement, and finds that the mailing and distribution of the Notice and Proof of Claim and the publication of the Summary Notice, substantially in such form and substantially in the manner and form set forth in this Order, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, § 15 U.S.C.A. 77z-1(a)(4-8), and due process. Such notice is the best notice practicable under the circumstances and shall constitute valid, due and sufficient notice to all Members of the Class. Plaintiffs' Lead Counsel is hereby authorized to provide such Notice to those Members of the Class that can be identified through reasonable effort.

5.      The notification provisions of the Class Action Fairness Act, 28 U.S.C. §1715 ("Notifications to appropriate federal and state officials"), do not apply to this case, since it was commenced before February 18, 2005.

6.      Plaintiffs' Lead Counsel is hereby authorized to retain Heffler, Radetich & Saitta LLP as the Claims Administrator to supervise and administer the notice procedure as well as the processing of claims and distribution of the Net Settlement Fund.

7.      Not later than ten (10) days from the date of this Order, Plaintiffs' Lead Counsel shall cause copies of the Notice and Proof of Claim, substantially in the forms attached as Exhibits B and C to the Settlement Agreement, to be mailed by first class mail to all Members of the Class reasonably identified by the list of American Business Noteholders furnished to Plaintiffs' Lead Counsel by the Trustee in Bankruptcy of American Business, which mailing shall be directed to the Noteholders' addresses listed on such records or such updated or revised addresses as may be available. The Notice and Proof of Claim shall also be mailed to all parties who previously opted out of the

Class pursuant to the notice dated May 2, 2008. The date of the initial mailing of the Notice of Settlement shall be referred to as the "Notice Date."

8.       Not later than seven (7) days after the Notice Date, Plaintiffs' Lead Counsel shall cause the Summary Notice, substantially in the form attached as Exhibit D to the Settlement Agreement, to be published once in the national edition of *USA Today* and shall cause a copy of the Summary Notice to be published electronically on PR Newswire.

9.       Plaintiffs' Lead Counsel shall also cause copies of the Notice and Proof of Claim to be mailed as soon as practicable to Persons who indicate, in response to the Summary Notice or otherwise, that they purchased or rolled over American Business Notes during the Class Period and to other Persons who are identified as having purchased or rolled over American Business Notes during the Class Period.

10.      Not later than five (5) days before the Final Hearing, Plaintiffs' Lead Counsel or the Claims Administrator shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration under penalty of perjury, of the publication and mailing of the Notices.

11.      All Class Members, except those who exclude themselves, shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable.

12.      All Members of the Class who wish to be excluded from the Class must submit a request for exclusion in the manner described in the Notice postmarked at least ten (10) days before the Final Hearing date set forth in paragraph 3 above. Any person who does not submit a valid and timely request for exclusion shall be a Class Member,

4

except that persons who previously excluded themselves from the Class pursuant to the Notice dated May 2, 2008 ("Prior Opt-Outs") shall not be considered Members of the Class. (Notwithstanding the foregoing, Prior Opt-Outs may rejoin the Class, and shall be considered Members of the Class provided they so request by a writing post-marked at least ten (10) days before the Final Hearing date set forth in paragraph 3 above). All requests for exclusion must include information sufficient to establish proof of purchases and roll overs of American Business Notes during the Class Period.

13.    Plaintiffs' Lead Counsel shall present the Opt-Out List to Defense Counsel five (5) days before the Final Hearing.

14.    If the number of persons on the Opt-Out List comprises 10% or more of the total number of persons in the Class, Defendants shall inform Plaintiffs' Lead Counsel, as specified in the Settlement Agreement, Section 10, whether Defendants intend to withdraw from the Settlement Agreement, at least three (3) days before the Final Hearing.

15.    If Noteholder Plaintiffs are able to reduce the number on the Opt-Out List to below 10% of the total number of Members of the Class by the day before the Final Hearing, they must serve Defendants with a list of persons who have withdrawn their request for exclusion or who were not Members of the Class. If the list of persons withdrawing their request for exclusion is accurate, the Final Hearing will take place as scheduled.

16.    Any Member of the Class who has not requested exclusion may appear with or without counsel, and object to the proposed Settlement of the Action, the proposed Plan of Allocation of the Net Settlement Fund, the Request for Attorneys' Fees

and Costs, and/or the request for Plaintiffs' Expense Awards (collectively "Objections");

provided, however, that no Member of the Class shall be heard or entitled to make

Objections unless that person has served, by first class U.S. mail, postmarked on or

before ten (10) days before the Final Hearing, written Objections and copies of any

papers and briefs upon each of the following:

Todd S. Collins, Esquire
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103

Vincent Marriott, Esquire
Ballard Spahr Andrews & Ingersoll
1735 Market Street, 51st Floor
Philadelphia, PA. 19103

Marc Sonnenfeld, Esquire
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA. 19103

Nancy Gellman, Esquire
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA. 19102

and has filed the Objections, papers and briefs with the Clerk of the United States District

Court for the Eastern District of Pennsylvania (which filing may be done by mail, if

postmarked on or before ten (10) days before the Final Hearing). Any such written

Objections must include proof of membership in the Class (*e.g.*, proof of purchases or

roll overs of American Business Notes during the Class Period). Any Member of the

Class who does not make his, her or its Objections in the manner provided shall be

deemed to have waived such Objections and shall forever be foreclosed from making any

such Objections. Any Class Member who files and serves Objections is not required to

appear at the Final Hearing. The Court will rule on all timely filed written Objections.

17.    Any response to any Objections shall be filed no later than three (3) days

before the Final Hearing.

18.     All papers in support of the Settlement, the Plan of Allocation, the Attorneys' Fees and Costs application, and/or the application for Plaintiffs' Expense Awards shall be filed at least twenty (20) days before the Final Hearing.

19.     Any Member of the Class may enter an appearance in the Action, at his, her or its own expense, individually or through counsel of his, her or its own choice. Members of the Class that do not enter an appearance will be represented by Plaintiffs' Lead Counsel.

20.     Class Members who wish to participate in the Net Settlement Fund shall complete and submit,  postmarked on or before January 2, 2009, signed Proofs of Claim and Releases, signed Substitute W-9 Forms and documents to prove their Class membership and the amount owed on their Notes (principal and interest) as of January 21, 2005.

21.     The Claims Administrator shall notify each person who files a Proof of Claim whether or not the Claim is accepted or is rejected in whole or in part.  If the Claim is rejected, in whole or in part, the Claims Administrator will give the Claimant the reasons for the rejection.  Claimants who are told their Claim is rejected will be permitted to remedy their Proof of Claim, if that is possible.  If the Claim is still rejected in whole or in part, the Claimant may request review by the Court in accordance with the requirements of ¶¶ 8.7 and 8.8 of the Settlement Agreement.

22.     Upon the Effective Date of the Settlement, all Class Members, whether or not they filed an approved  Proof of Claim within the time provided for, and whether or not they participate in the Settlement Fund, shall be barred from asserting any Released Claims, and any such Class Member shall be conclusively deemed to have fully, finally,

and forever released the Released Parties, from any and all such Released Claims, including Unknown Claims. Defendants shall have released Noteholder Plaintiffs, Class Members and Plaintiffs' Counsel from all claims relating to the Notes or the Action, including any Unknown Claims. The full definitions of the Terms "Released Claims", "Released Parties" and "Unknown Claims" are set forth in the Settlement, Part IV, paragraphs 1.28, 1.29 and 1.35, respectively.

23.     As of the Effective Date, the distribution of the Net Settlement Fund in accordance with the terms and obligations of the Settlement Agreement will be approved; and only Class Members shall have any right to any portion of the Net Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Settlement Agreement.

24.     Pending final determination of whether the Settlement should be approved, neither the Noteholder Plaintiffs nor any Class Member, either directly, representatively, or in any other capacity, shall commence against any Released Party any action or proceeding in any court or tribunal asserting any of the Released Claims.

25.     Pending final determination of whether the Settlement should be approved, all discovery and all proceedings in the Action are stayed, except for proceedings relating to the Settlement.

26.     At or after the Final Hearing, the Court will determine whether the Attorneys' Fees and Costs application and the application for Plaintiffs' Expense Awards should be approved. Any such amounts awarded shall be paid immediately, subject to the conditions set forth in the Settlement Agreement, Section 9.

27.     All reasonable costs incurred in identifying and notifying Members of the Class, administering the Settlement, Taxes, Tax Expenses, and distributing the Net Settlement Fund, shall be paid as set forth in the Settlement Agreement.

28.     The Court reserves the right to adjourn the date of the Final Hearing and any adjournment thereof without further notice to Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

Dated: _____, 2008

                              BY THE COURT:


                              _____
                              THOMAS N. O'NEILL, JR.
                              UNITED STATES DISTRICT JUDGE

malta440956-001

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE AMERICAN BUSINESS FINANCIAL SERVICES INC. NOTEHOLDERS LITIGATION | ) ) ) ) ) | Master File No. 05-232 |

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

# If you bought American Business Services Notes, Debentures or Money Market Notes (the "Notes") between January 18, 2002 and January 20, 2005 (the "Class Period"), you could get a payment from a class action settlement.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- This Settlement will provide $16,767,500 in cash, plus interest (the "Settlement" and the "Settlement Amount"), to pay claims of persons (the "Class") who, during the Class Period, bought or rolled over Notes issued by American Business Financial Services Inc. ("American Business" or the "Company").

- The Settlement Amount is about 2.5% of the total amount owed to all Class members for principal and interest on the Notes at the time the Company filed for Bankruptcy in January 2005.  In addition, the Trustee in Bankruptcy for the Company's Bankruptcy proceedings (the "Trustee" and

1

the "Bankruptcy") has settled for an additional $16,767,500 for the benefit of the Bankruptcy estate (the "Trustee Settlement" and the "Trustee Settlement Amount"). Noteholder Class members' claims represent over 75% of the dollar amount of the claims filed in the Bankruptcy that have not yet been paid (though some Bankruptcy claimants have higher priority than some or all Class members). It is hoped that there will be additional recoveries for the benefit of the Class and/or the Bankruptcy estate against other defendants, though there can be no assurance this will occur.

- Plaintiffs believe that this is a good Settlement, because the Settlement Amount represents a substantial recovery. Also, the Settlement Amount represents a high percentage of the assets available for payment of claims asserted against the particular Defendants in this class action, as described below.

- The lawyers for Plaintiffs and the Class ("Class Counsel") have spent thousands of hours over three and a half years in bringing and litigating this class action suit on a contingent fee basis. They have advanced all the expenses of the lawsuit. Plaintiffs intend to ask Judge Thomas N. O'Neill, Jr., who is in charge of this case (the "Court") to award Class Counsel fees of up to 30% of the Settlement Amount, and reimbursement of litigation expenses of not more than $325,000.

2

- Your legal rights are affected whether you act, or don't act, in response to this Notice.

-

## PLEASE READ THIS NOTICE CAREFULLY

## YOUR LEGAL RIGHTS AND OPTIONS IN

## THIS SETTLEMENT ARE LISTED BELOW

**WHAT YOU CAN DO**                    **WHAT WILL RESULT**

| | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF OR OPT OUT** | Get no payment. This allows you to sue Defendants on your own about the claims in this case, hiring your own attorneys. |
| **OBJECT BUT REMAIN IN THE SETTLEMENT** | Write to the Court about why you don't like the Settlement, the Plan of Allocation, or the request for Class Counsel's fees and costs or for Plaintiffs' Expense Awards. The Court will consider your objection. You will still get a payment, if you file a valid, approved Proof of Claim, and if the Court approves the Settlement. |
| **WITHDRAW YOUR PRIOR EXCLUSION** | Even if you asked to be excluded from the Class in response to the Notice dated May 2, 2008 (which informed you that this class action is pending), you can withdraw that exclusion and get a payment if you file a valid, approved Proof of Claim, and if the Court approves the Settlement. |
| **GO TO A HEARING** | The Court will conduct a hearing on _____, 2008. This hearing is open to the public. It will take place at ___ o'clock in Courtroom ___ at 601 Market Street, Philadelphia, PA 19103. To speak at the hearing about any objection you may have filed, you will need to give advance written notice to the Court and the parties. |
| **DO NOTHING** | Get no payment. Give up your rights. |

- The Settlement and the Trustee Settlement release and dispose of claims against the Company's former officers and directors. The Settlement Amount and the Trustee Settlement Amount represent substantially all of the

3

assets believed to be available for payment of claims asserted against former officers and directors, considering insurance proceeds and the assets of the Officer Defendants. (Defendants who were outside directors, and thus not members of management, generally have stronger defenses against the claims asserted.)

- Plaintiffs, on behalf of the Class, seek to recover additional amounts by continuing to pursue claims against the accounting company, BDO Seidman, LLP ("BDO"), the Company's outside auditor during the Class Period. On behalf of the Bankruptcy estate, the Trustee continues to pursue claims against a number of different parties, including Wall Street investment firms. (In order to participate in any distribution of money from the Bankruptcy estate, you should have filed a proof of claim in the Bankruptcy proceedings. If you have questions about the Bankruptcy, please refer to www.ABFSonline.com.

- After Class Counsel's fees and expenses are deducted, as well as expenses related primarily to the Holdback (see Question 9), sending notice, processing claims, and paying Plaintiffs' Expense Awards, the rest (the "Net Settlement Fund") of the Settlement Amount will be distributed to Class members based on the amount American Business owed each Class Member for their Notes (principal and interest) as of January 2005. Your actual

4

recovery will depend on how many Class Members submit valid Proof of Claim forms, the amount the Court awards for fees and various expenses, and other factors. See Questions 10 and 18 below for a more detailed explanation.

- The Settlement ends the lawsuit against the Company's former directors and officers concerning whether the Registration Statements, by which the Notes were sold (the "Registration Statements"), contained untrue statements. Plaintiffs claim that the Registration Statements misled Noteholders about the financial condition of American Business and the ability of the Company to repay the Notes. Defendants, who were former American Business directors and officers, deny the claims in the lawsuit. The parties disagree not only on liability issues but also on how much money could have been recovered had the Class won at trial. See Questions 2 and 4 below for a more detailed explanation.

For further information regarding this Settlement and a copy of the Settlement Agreement you may (1) contact Plaintiffs' Lead Counsel: Todd S. Collins or Elizabeth W. Fox, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA, 19103-6305, Telephone: 215-875-3000; (2) write to Claims Administrator, American Business Financial Services Inc. Noteholders Litigation, Heffler,

Radetich & Saitta LLP, P.O. Box 360, Philadelphia, PA 19105-0360; or (3) visit the website at www.hrsclaimsadministration.com, where you will find answers to common questions about the Settlement, the claims procedure, and related matters.

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

The Court in charge of this case has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement, after appeals are over, after other conditions are satisfied, and after the claims are processed. Please be patient.

## <u>WHAT THIS NOTICE CONTAINS</u>

**BASIC INFORMATION** ............................................................................ **Page**

1.    **Why did I get this Notice package?**

2.    **What is this lawsuit about?**

3.    **Why is this a class action?**

4.    **Why is there a Settlement?**

**WHO IS IN THE SETTLEMENT** ................................................. **Page**

5.    **How do I know if I am part of the Settlement?**

6.    **Are there exceptions to being included?**

**THE SETTLEMENT BENEFITS – WHAT YOU GET** ............................. **Page**

7.    **What does the Settlement provide?**

8.    **Are there claims on behalf of the Class that will not be dismissed?**

9.    **What is the Settlement Amount?**

10.    **What can I expect to receive under the proposed Settlement?**

**HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM** ...... **Page**

11.    **How can I get a payment?**

12.    **When would I get my payment?**

13.    **What am I giving up to get a payment and to stay in the Class?**

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...................... **Page**

14.    **How do I get out of the Settlement?**

15.    **If I already excluded myself, how can I get back into the Settlement?**

**THE LAWYERS REPRESENTING YOU**        **Page**

16.    **Do I have a lawyer in this case?**

17.    **How will the lawyers be paid?**

18.    **Will the Plaintiffs be paid?**

**OBJECTING TO THE SETTLEMENT** ...................................................... **Page**

**19.    How do I tell the Court that I do not like the Settlement?**

**20.    What is the difference between objecting and requesting exclusion?**

**THE COURT'S FAIRNESS HEARING** ......................................................... **Page**

**21.    When and where will the Court decide whether to approve the**

       **Settlement?**

**22.    Do I have to come to the hearing?**

**23.    May I speak at the hearing?**

**IF YOU DO NOTHING** ....................................................................... **Page**

**24.    What happens if I do nothing at all?**

**UNDERSTANDING YOUR PAYMENT – THE PLAN OF ALLOCATION....**
**Page**

**25.    How will each Authorized Claimant's Payable Claim be calculated?**

**26.    What if my Payable Claim is less than $10.00?**

**27.    If I receive no payment, will I be bound by the Court's final Order?**

**28.    If I don't like the allocation, can I sue the Plaintiffs, Class Counsel or**

       **the Claims Administrator?**

8

# BASIC INFORMATION

**1.    Why did I get this Notice package?**

You or someone in your family probably bought or rolled over Notes during the Class Period.   (If you bought all your Note(s) before January 18, 2002, and none of them was rolled over, you are <u>not</u> part of the Class, and you are not entitled to share in the Settlement proceeds.)  Judge Thomas N. O'Neill, Jr. of the United States District Court for the Eastern District of Pennsylvania is in charge of this class action.  The Noteholders who sued on behalf of the Class -- John A. Malack, Virgil Magnon, Michael Rosati, S.S. Rajaram M.D., Hayward Pediatrics, Inc., and Henry Munster - - are called Plaintiffs. The persons they sued  -- Anthony Santilli, Albert Mandia, Leonard Becker, Michael DeLuca, Harold Sussman, Jerome Miller, Warren Palitz, and Jeffrey Steinberg -- all former officers or directors of American Business --are called Defendants.  American Business is not a defendant because it filed for Bankruptcy.

The Court directed that you be sent this Notice, if you are a member of the Class, because you have a right to know about the proposed Settlement of this class action lawsuit, and about all of your choices, before the Court decides whether to

9

approve the Settlement.  If the Court approves the Settlement, and objections to the Settlement submitted by Class Members (as explained below) and/or any appeals are denied, then an administrator appointed by the Court will process the claims received and distribute payments to Class Members with valid claims.  You can track the progress of the Settlement by visiting: www.hrsclaimsadministration.com.

This Notice explains the lawsuit, the Settlement, your legal rights, the benefits that are available, who is eligible for them, and how to get them.  It also contains the Proof of Claim Form and the Substitute Form W-9 that you must fill out, sign, and send in to get a payment.

**2.     What is this lawsuit about?**

The lawsuit claims that Defendants misled Class members, who bought or rolled over Notes during the Class Period, by misrepresenting American Business's financial results and condition.  The lawsuit claims that Defendants issued Registration Statements that failed to tell the Class that the Company would not be able to pay back the Notes.  The lawsuit claims that as a result of these false and misleading statements, you bought the Notes, and then lost all the money you had

10

invested.  Defendants deny they did anything wrong, and deny that they caused

your losses.

**3.    Why is this a class action?**

In a class action, one or more persons called Plaintiffs sue for all persons who have

similar claims -- in this case, all persons who bought Notes after January 18, 2002

and lost their money.  All of these persons are referred to as a Class, or,

individually, as Class members. One court resolves all of the issues for all Class

members, except for those members of the Class who exclude themselves from the

Class.

**4.    Why is there a settlement?**

The Court did not decide in favor of Plaintiffs or Defendants.  Instead, Plaintiffs on

behalf of the Class, whose members bought Notes during the Class Period, and

Defendants, who were officers and directors of American Business during the

Class Period, have agreed to settle.  Plaintiffs have agreed to settle this lawsuit

based on:  (1) the facts they have discovered during the litigation; (2) the size of

the Settlement Amount; (3) the fact that it is unlikely that more than the Settlement

11

Amount would be recovered if the case went to trial; and (4) their conclusion that the proposed Settlement is fair, reasonable and adequate under the circumstances, and serves the best interests of the Class members.

Plaintiffs and Defendants disagree about the merits of Plaintiffs' claims against Defendants. The major issues on which the parties disagree include: (1) whether Defendants made any false and misleading statements in the Registration Statements; (2) whether the financial statements in the Registration Statements were materially false or otherwise actionable under the federal securities laws; (3) whether some or all of the Defendants reasonably relied on others, such as the Company's outside auditors, when they signed the Registration Statements; and (4) whether Defendants could show that nothing in the Registration Statements caused the Class's losses.

While Plaintiffs and Class Counsel were prepared to go to trial, and believed they could win the case, they knew that the only substantial amount of money available was from the directors' and officers' insurance policies. Practically all of these available insurance proceeds are being recovered in the Settlement and the Trustee's Settlement. Even if Plaintiffs had refused to settle and then proceeded to win at trial, they likely would not have recovered more than the Settlement

Amount, especially since substantial insurance proceeds would have been used up in paying to defend the Defendants through trial and appeals.

## WHO IS IN THE SETTLEMENT

To see if you will get money from the Settlement, you first have to decide if you are a Class Member.

**5.    How do I know if I am part of the Settlement?**

You are a Class Member if you bought or rolled over Notes during the Class Period (between January 18, 2002 and January 20, 2005).  You can find out when you bought your Notes by looking at the Notes or looking at the statements sent to you by American Business.

**6.    Are there exceptions to being included?**

You are not a Class Member if you are a Defendant in this lawsuit or a relative or member of the immediate family of any of the Defendants.    You are also not a Class Member if you bought or rolled over all your Notes before January 18, 2002.  Also, if you have previously excluded yourself

13

from the Class, as described below, you are not a part of the Class, unless you tell the Court that you no longer wish to be excluded by signing the Proof of Claim and Release and checking the box after paragraph 2 of the Proof of Claim.  See Questions 11 and 15 for a detailed explanation.

### THE SETTLEMENT BENEFITS – WHAT YOU GET

**7.    What does the Settlement provide?**

On September 12, 2008, the parties in the lawsuit arrived at the proposed Settlement of the lawsuit and signed a Settlement Agreement.  The terms of the proposed Settlement, including the payment of $16,767,500, are summarized below and are in the Settlement Agreement.  You can obtain a copy of the Settlement Agreement by writing to Plaintiffs' Counsel, or by visiting www.hrsclaimsadministration.com.

The Settlement provides that each of the Defendants will cooperate by providing information in connection with Plaintiffs' ongoing case against BDO and the Trustee's case against banks, a law firm, BDO and others.  These ongoing cases are described in answer to Question 8.

The Settlement requires that all Class members release all of the Defendants in this lawsuit for all claims against those Defendants (but not defendants in other cases) concerning American Business Notes. This means that you agree never again to sue any of the Defendants (or Released Parties) about the Notes and your losses. The exact legal language is in the Proof of Claim and Release at the end of this Notice.

**8.    Are there claims on behalf of the Class that will not be dismissed?**

On behalf of the Class, Plaintiffs continue to litigate against BDO, the accounting firm which was the Company's outside auditor. BDO will not be dismissed in connection with the Settlement.

On behalf of the Bankruptcy estate, the Trustee continues to litigate against several parties, including Wall Street investment firms that purchased and securitized many of the Company's mortgage loans, a law firm that represented American Business, BDO, American Business's lenders in the Bankruptcy proceedings and others.

Plaintiffs and the Trustee hope that, in connection with the ongoing lawsuits described above, they will win judgments or secure additional settlements so

that more payments can be made to or for the benefit of persons who are in
the Class, and the other creditors of the American Business Bankruptcy
estates. There is no certainty that this will occur, however.

**9.     What is the Settlement Amount?**

The proposed Settlement calls for Defendants to create a Settlement fund in
the amount of $16,767,500 in cash. This Settlement Amount has been
deposited into an interest bearing account, except for $170,000 (the
"Holdback"), which has been reserved to cover further attorneys' fees the
former officers and directors may incur in connection with the Trustee's
ongoing lawsuit against other defendants. If such attorneys' fees are not
incurred, the Holdback, or part of it, will be reinstated as part of the
Settlement Amount or the Net Settlement Fund. Further, subject to the
Court's approval, a portion of the Settlement Amount will be used to pay
Class Counsel's fees and costs and other reasonable expenses of the case
(including notice and settlement administration costs and taxes on interest
earned), as well as Plaintiffs' Expense Awards. See Questions 16-18 below
for a more detailed explanation. The Net Settlement Fund, after the above

payments, will be paid to Class Members who submit valid claims ("Authorized Claimants").

**10.    What can I expect to receive under the proposed Settlement?**

Your share of the Net Settlement Fund will depend on: (1) the total dollar amount of all the valid claims; (2) the amount of interest earned by the Settlement Amount and the Net Settlement Fund; (3) the amount of administrative costs, including the costs of sending notice and settlement administration; (4) the amount of taxes and tax expenses; (5) the amount awarded by the Court for Class Counsel fees and costs; (6) the amount awarded by the Court for Plaintiffs' Expense Awards; and (7) the amount, if any, returned to the Net Settlement Fund from the Holdback.  The Claims Administrator will distribute the Net Settlement Fund, according to the Plan of Allocation, after the deadline for submission of Proof of Claim and Release forms has passed, and all claims have been processed, and after the Court has finally approved the Settlement and any appeals are resolved.  See Questions 25-26 for an explanation of the Plan of Allocation.

# HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

**11.    How can I get a payment?**

To get a payment, you must send in a signed Proof of Claim form ("Claim Form") and proof that you own Notes, the date and the amount of those Notes, and a signed Substitute W-9 Form. These Forms are attached to this Notice. You may also download a Claim Form from www.hrsclaimsadministration.com. Please (1) read the instructions carefully; (2) fill out the Claim Form, and sign it in the two places shown; (3) include copies of the documents the Claim Form asks for, including, specifically, copies of your Notes and a copy of the January 21, 2005 Investment Note Statement sent to you by American Business; and (4) mail the Claim Form and documents, postmarked no later than _____, 2008 to:

Claims Administrator
American Business Finance Inc. Noteholders Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 360
Philadelphia, PA 19105-0630

If you cannot find your documents, you should fill out the Claim Form and send it in anyway. The Claims Administrator may have enough information

18

to approve your claim. The Claims Administrator will process your claim and advise you if you are an "Authorized Claimant" -- meaning that your claim satisfies the requirements approved by the Court.  If the Claims Administrator rejects your claim or any part of it, you will be given an explanation and you will be given a chance to correct any problems.  If you disagree with the Administrator's final decision, you may appeal that decision to the Court.

If you excluded yourself from the Class in response to the Notice informing you of the pendency of this class action, dated  May 2, 2008, and now want to get a payment from the Settlement, you should send in the Claim Form with your documents and check the box after paragraph 2, saying that you want to withdraw your exclusion.

**12.    When would I get my payment?**

The Court has scheduled a hearing for _____, 2008, (the "Final Hearing") to decide whether to approve the Settlement.  See Question 21.

Even if the Court approves the Settlement, there may be appeals that would delay the payments. After the approval, and the resolution of any appeals, the Claims Administrator must process all of the Claim Forms. As many as 27,000 persons could send in Claim Forms. Everyone who sends in a Claim Form will be informed of the approval or disapproval of his or her claim. Please be patient. You can also track the progress of the Settlement by visiting: www.hrsclaimsadministration.com.

**13.    What am I giving up to get a payment and to stay in the Class?**

Unless you exclude yourself, you will remain in the Class. If the Settlement is approved, you and all Class members will release all of the claims that are covered by the Settlement Agreement ("Released Claims") against Defendants and the "Released Parties." This means that you agree not to sue or be part of a lawsuit about the Notes against the Defendants -- who, as noted, are former officers and directors of American Business. It also means that all of the Court's orders will apply to you and legally bind you. Please see the definitions of the terms that are in quotations in the Claim Form. If

20

you sign the Claim Form, you are agreeing to release all the "Released Claims" against "Released Parties" as defined in the Claim Form, which describes exactly the legal claims that you give up unless you opt out.

The Settlement will not affect your participation, as a Class member, in Plaintiffs' ongoing suit against BDO, the former auditor of American Business. In addition, the Trustee will continue to pursue claims on behalf of the Bankruptcy estate. See Question 8.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do **not** want to receive a payment from this Settlement, and you want to keep the right to sue Defendants on your own about the legal issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself—or is sometimes referred to as opting out of the Class.

**14.    How do I get out of the Settlement?**

To exclude yourself from or opt out of the Settlement, you must send a letter by mail stating that you want to be excluded from *In re American Business Financial Services, Inc. Noteholders Litigation*, File No. 05-CV-232. Be sure to include your name, address, telephone number, and your signature, along with the purchase date and amount of each of your Notes to prove your membership in the Class. You must mail your exclusion request postmarked no later than _____, 2008 to:

Claims Administrator
American Business Financial Services, Inc.
Noteholders Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 360
Philadelphia, PA 19105-0360

You can't exclude yourself on the phone or by e-mail. **If you ask to be excluded, you will not receive a Settlement payment, and you cannot object to the Settlement.** If you ask to be excluded, you will not be legally bound by anything that happens in this lawsuit or Settlement, and you may be able to sue Defendants on your own, subject to various factors including

22

applicable statutes of limitation.  If you have already excluded yourself from the Class and want to remain excluded and not get a payment, you do not need to send in anything.

**15.    If I already excluded myself, how can I get back into the Settlement?**

If you opted out in response to the May 2, 2008 notice to the Class, and now want to rejoin the Class and get a payment, you may do so by checking the box after paragraph 2 of the Claim Form and signing and returning the Claim Form.  See Question 11 above.

## THE LAWYERS REPRESENTING YOU

**16.    Do I have a lawyer in this case?**

The Court approved the law firm of Berger & Montague, P.C. to represent you and the other Class Members. Other law firms have also done some of the legal work. The lawyers from Berger & Montague and these firms are called Class Counsel. You will not be charged for these lawyers, except that, as noted, they will seek payment of their fees and expenses from the Settlement Amount. If you want to be represented by your own lawyer, you may hire one at your own expense.

**17.    How will the lawyers be paid?**

Class Counsel have spent a lot of time working on this suit on a contingent fee basis, and have advanced the expenses of litigation -- up to $325,000 -- with the expectation that if they were successful in recovering money for the

24

Class, they would receive fees and be reimbursed for their expenses from the

Settlement Amount, as is customary in this kind of litigation. They also

took the risk that if the suit was not successful, they would not be paid

anything. Therefore, Class Counsel will ask the Court at the Final Hearing

(see Question 21 below) to make an award of attorneys' fees in an amount

not more than 30% of the Settlement Amount and for reimbursement of

expenses in an amount not more than $325,000. The Court may award less

than these amounts. Any amounts awarded by the Court will come out of

the Settlement Amount.

## 18.    Will the Plaintiffs be paid?

Class Counsel will ask the Court to reimburse Plaintiffs for their reasonable,

out-of-pocket costs and expenses (including lost wages directly related to the

representation of the Class) in acting as Plaintiffs and Class representatives.

These are called Plaintiffs' Expense Awards. This is in addition to

Plaintiffs' pro rata shares of the Net Settlement Amount. Plaintiffs have

devoted considerable time to consulting with Class Counsel, providing

discovery, and providing their depositions over the last three and a half

years. The Plaintiffs' Expense Awards will come out of the Settlement

Amount. The total amount of Plaintiffs' Expense Awards, will not exceed

$50,000.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement, any part of

the Settlement, the Plan of Allocation, and /or the requests for Class

Counsel's fees and expenses and Plaintiffs' Expense Awards ("Objections"

or "to object"). The Court will consider your Objections and rule on them at

or after the Final Hearing on _____, 2008.

**19.    How do I tell the Court that I do not like the Settlement?**

If you are a Class Member, you can object. The Court will consider your views.

To object, you must send a letter stating that you object in *In re American Business*

*Financial Services, Inc. Noteholders Litigation*, File No. 05-CV-232. Be sure to

include your name, address, telephone number, your signature, and the purchase

date and amount of each of the Notes you held at the time of the Bankruptcy to show your membership in the Class.  In the letter, write all of the reasons for your objection to the Settlement, to the proposed Plan of Allocation, or to the requests for Class Counsel fees and expenses and Plaintiffs' Expense Awards. Mail the Objection to the five different places stated below, postmarked no later than _____, 2008.

## Places to Mail Objections

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br><br>United States District Court<br><br>District Court<br><br>Eastern District of Pennsylvania<br><br>601 Market Street, Room 2609<br><br>Philadelphia, PA 19106 | Todd S. Collins, Esquire<br><br>Elizabeth W. Fox, Esq.<br><br>Berger & Montague, P.C.<br><br>1622 Locust Street<br><br>Philadelphia, PA 19103 | Marc J. Sonnenfeld, Esquire<br><br>Morgan Lewis & Bockius LLP<br><br>1701 Market Street<br><br>Philadelphia, PA 19103<br><br>and<br><br>Vincent J. Marriott, III, Esquire<br><br>Ballard Spahr Andrews &<br><br>Ingersoll, LLP<br><br>51st Floor<br><br>1735 Market Street<br><br>Philadelphia, PA 19103-7599<br><br>and<br><br>Nancy Gellman, Esquire<br><br>Conrad O'Brien Gellman &<br><br>Rohn, P.C.<br><br>1515 Market Street, 16th Floor<br><br>Philadelphia, PA 19102 |

**20.    What is the difference between objecting and requesting exclusion?**

You can object only if you stay in the Class.  If you submit a valid claim, you will get a payment, even if you object.  Excluding yourself is telling the Court that you do not want to be part of the Class, and you do not want a payment from the Settlement.   If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a Final Hearing to decide whether to approve the Settlement and to consider other matters addressed in this Notice.  You may attend and you may ask to speak, but you do not have to be there or to speak.

**21.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Hearing at _____ _.m. on _____, 2008, at the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Courtroom ____, Philadelphia, PA 19106.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate.   At or after the hearing, the Court will also decide whether to approve the proposed Plan of Allocation, how much to pay Class Counsel for attorneys' fees and expenses, and whether to pay Plaintiffs' Expense Awards.  If there are Objections, the Court will consider them. The Court will listen to people (or their lawyers) who have submitted a written Objection and have told the Court of their intent to appear and speak at the hearing, post-marked no later than _____, 2008, and mailed to the five different places listed in the chart following Question 19 above.  We do not know how long these decisions will take.

**22.    Do I have to come to the hearing?**

No.  Class Counsel will answer any questions the Court may have.  But, you are welcome to come at your own expense.  If you file an Objection, you do not have to come to court to talk about it.  As long as you mailed your written Objection on time, the Court will consider it.  You may also attend or pay your own lawyer to attend to speak in support of any Objection you may have mailed, but it is not necessary.  You may speak as long as you have followed the instructions set forth in the answer to Question 23.

**23.    May I speak at the hearing?**

If you have submitted a written Objection to the Settlement, and followed the instructions in Questions 19 and 21 and this paragraph, you (or your lawyer) may speak at the Fairness Hearing in support of your Objection.  To speak at the hearing, you or your lawyer  must send a letter, along with your written Objection, saying that it is your "Notice of Intention to Appear in *In re American Business Financial Services, Inc. Noteholders Litigation*, File No. 05-CV-232."  Be sure to

include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than _____, 2008, and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the addresses listed in Question 19. You may not speak at the hearing if you exclude yourself.

## IF YOU DO NOTHING

**24.    What happens if I do nothing at all?**

**If you do nothing, you will not receive any money from this Settlement.** You also will not be able to start a lawsuit against Defendants about the legal issues in this case, ever again. You will not be permitted to object to this Settlement.

# UNDERSTANDING YOUR PAYMENT – THE PLAN OF ALLOCATION

The Plan of Allocation is the method by which the Claims Administrator will calculate how much to pay each Authorized Claimant.

## 25.    How will each Authorized Claimant's Payable Claim be calculated?

The  Net Settlement Fund will be divided among the Authorized Claimants in accordance with the Plan of Allocation.  The amount to be paid to you, if you are an Authorized Claimant, is your Payable Claim.  Your Payable Claim requires calculation of your Recognized Loss.  Recognized Loss equals the total amount American Business owed you (including both principal and interest) on your Notes as of January 21, 2005, the day American Business filed in Bankruptcy (except for the amount American Business owed you on Notes bought before January 18, 2002, which were not rolled over).  Recognized Loss also includes any amount the Trustee collected from you with respect to principal or interest paid by American Business on your Notes after October 21, 2004.   The Plan of Allocation is based

33

on each Authorized Claimant's pro rata share of the Net Settlement Fund.  In other words, the greater your Recognized Loss,  the larger your Payable Claim will be.

To figure out your Payable Claim as an Authorized Claimant, the Claims Administrator will calculate what percent your Recognized Loss represents of the total of all Authorized Claimants' Recognized Losses.  Once your percent of all Recognized Losses is calculated, then that percent times the total Net Settlement Fund will be your Payable Claim.

With respect to Senior Collateralized Note Holders, nothing will be paid  for preferred stock held.

**26.    What if my Payable Claim is less than $10.00?**

In the interest of economy, no payment will be made to any Authorized Claimant whose Payable Claim would be less than $10 based on the initial allocation of the Net Settlement Fund to the Authorized Claimants.

**27.    If I receive no payment, will I be bound by the Court's final order?**

Payment in the manner set forth above (including not paying amounts below $10 and not paying anything to Class Members who did not submit signed Claim Forms) will be considered to be conclusive compliance with the Settlement. All Class members who fail to submit valid and timely Proofs of Claim, or whose payable claim is less than $10, will be barred from receiving payments from the Net Settlement Fund. All Class members, except those who opt out, whether or not they get a payment, will be bound by all of the terms of the Settlement, including the terms of any final orders or judgments entered and the releases given to Defendants and others. This means that they will not be permitted to sue Defendants concerning the Notes.

**28.    If I don't like the allocation, can I sue the Plaintiffs, Class Counsel or the Claims Administrator?**

No. Although Class members have a right to send Objections to the Court, no Class member will have a right to make a claim against Plaintiffs, Class Counsel or

the Claims Administrator, or any other person designated by Class Counsel, based on the distributions made in accordance with the Settlement, the Plan of Allocation, and further Orders of Court. In addition, in the interest of achieving substantial justice, Class Counsel will have the right, but not the obligation, to waive what they believe to be formal or technical defects in any Proofs of Claim received by the Claims Administrator.

## INQUIRIES

All inquiries concerning this Notice, the Proof of Claim form, or any other questions by Class Members should be directed to the Claims Administrator listed above.

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE**

DATED: _____, 2008       BY ORDER OF THE COURT:


THOMAS N. O'NEILL, JR. JUDGE

# EXHIBIT C

[Attached to end of Notice]

**PROOF OF CLAIM AND RELEASE FORM AND SUBSTITUTE FORM W-9**

**I.     GENERAL INSTRUCTIONS**

1.     If you bought or rolled over Notes of American Business Financial

Services Inc. ("American Business") during the period from January 18, 2002 through January

20, 2005 (the "Class Period"), you are a "Class Member" and you may be entitled to a payment

from the Settlement proceeds.  (See the accompanying Notice for a description of persons that

are excluded from the Class.)  If you are NOT a member of the Class, PLEASE DO NOT submit

a Proof of Claim and Release.

2.     If you have already excluded yourself from the Class, but want to get a

payment from the Settlement, please check the box below and your exclusion will be withdrawn.

In this event, you will be bound by the Settlement and release Defendants in this case.

**[    ]  I want to withdraw my exclusion filed in May or June 2008.**

3.     To get a payment, you must:

a.   complete this Proof of Claim and Release and sign it on page __.

b.   complete the Substitute Form W-9 and sign it on page __.

c.   mail your completed and signed Proof of Claim and Release Form,

your completed and signed Substitute Form W-9 and documents proving

your claim (such as copies of your Notes and your January 21, 2005

Investment Note Statement from American Business), postmarked on or

before _____, 2008, addressed as follows:

1

Claims Administrator
American Business Financial Services
Noteholders Litigation
Heffler Radetich & Saitta LLP
P.O. Box 360
Philadelphia, PA 19105-0360

4.    If you do not send your signed Proof of Claim and Release and signed Substitute W-9 Form and documents to prove your claim (such as your January 21, 2005 Investment Note Statement from American Business, and copies of your Notes) to the address above, postmarked by January 2, 2009, your claim may be rejected and you may not get any payment from the Settlement, as explained in the Notice.  Submission of this Proof of Claim and Release, however, does not assure that you will get a payment from the Settlement.

## II.    PROOF OF CLAIM AND RELEASE

5.    By submitting this Proof of Claim, I state that I believe in good faith that I am a Class member as defined above and in the Notice of Proposed Settlement of Class Action, (the "Notice"), or am acting for such person; that I am not a Defendant in the Action, the family member of a Defendant, a trust of which a Defendant is a settlor, or any entity in which a Defendant has a controlling interest; that if I asked to be excluded from the Class in response to the notice dated May 2, 2008, I want to withdraw that exclusion; that I have read and understand the Notice; that I believe that I am entitled to receive a share of the Net Settlement Amount; and that I have decided to participate in the proposed Settlement described in the Notice.  (If you are acting on behalf of a Class member, for instance, as an executor, administrator, trustee, or other representative, you must send evidence of your current authority to act on behalf of that Class Member.  Such evidence would include, for example, copies of letters testamentary, letters of administration, or a copy of the trust documents.)

2

6.    I understand that the information contained in this Proof of Claim is subject to such verification as the Court may direct, and I agree to cooperate in any such verification.  If the Claims Administrator requests additional information, I will provide it if I can.

7.    I have set forth where requested below all relevant information about all of my Notes.

8.    I have included copies of my Notes and copies of my latest statement from American Business.

9.    CLAIMANT IDENTIFICATION - PLEASE TYPE OR PRINT

_____
Noteholder's Name

_____
Joint Owners' Name

_____
Street Address

_____
City/State/Zip Code

_____
Foreign Province/Foreign Country

_____
E-Mail Address, if any

_____ (day)
Area Code Telephone Number

_____ (evening)
Area Code Telephone Number

3

10.    SCHEDULE OF TRANSACTIONS IN AMERICAN BUSINESS NOTES, DEBENTURES OR MONEY MARKET NOTES

**PLEASE LIST ALL NOTES HELD BY YOU AS OF JANUARY 21, 2005**

| Date You Originally Bought Note (Mo./Day/Year) | Dollar Amount Of Original Investment | Date Rolled Over, If Any | Accrued (Unpaid) Interest As of January 21, 2005 | Balance As Of January 21, 2005 |
|---|---|---|---|---|
| 1. | 1. | 1. | 1. | 1. |
| 2. | 2. | 2. | 2. | 2. |
| 3. | 3. | 3. | 3. | 3. |
| 4. | 4. | 4. | 4. | 4. |
| 5. | 5. | 5. | 5. | 5. |
| 6. | 6. | 6. | 6. | 6. |

Total dollar amount of Notes, including principal and unpaid interest, as of January 21, 2005: $_____ (excluding amounts for Notes bought before January 18, 2002 and not rolled over).

If you exchanged any or all of your Notes in an Exchange Offer (receiving in exchange Preferred Stock and Senior Collateralized Notes), check here: _____

If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.

4

If one or more of your Notes was paid by American Business after October 21, 2004, and if the Trustee in Bankruptcy of American Business collected some or all of that payment from you as a preference payment, check here: _____. Specify how much you paid the Trustee here: _____. Please supply supporting documents with respect to this payment you made to the Trustee.

**YOU MUST READ THE REMAINDER OF THIS FORM AND SIGN BELOW**

12.    I hereby warrant and represent that I have not assigned or transferred, voluntarily or involuntarily, any "Released Claims" as defined below.

13.    On the Effective Date (as defined in the Settlement) my signature will constitute a full and complete release, remise and discharge by me or, if I am submitting this Proof of Claim on behalf of an estate or one or more other persons, by it, him, her or them, and by my, its, his, her or their heirs, executors, administrators, successors, and assigns of each of the "Released Parties" of all "Released Claims," as defined below.  In paragraphs (a) (b) and (c) below, "Action" means *In re American Business Financial Services, Inc. Noteholders Litigation*, Master File No. 05-CV-232 (E.D. Pa.), and "Noteholder Defendants" are the Defendants in this Action.

(a)    "Released Claims" collectively means and includes any and all claims or causes of action, debts, suits, rights of action, dues, expenses, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, judgments, variances, executions, obligations, demands, rights, liabilities, damages, losses, fees, and costs of any kind, nature and/or description

5

whatsoever, whether class or individual in nature, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not asserted, threatened, alleged or litigated, at law, admiralty, equity, or otherwise, including, without limitation, claims for contribution or indemnification, or for costs, expenses (including, without limitation, amounts paid in Settlement) and attorneys' fees (including, without limitation, costs, expenses and attorneys' fees incurred in connection with this Agreement and the Settlement of the Action), claims for negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, malpractice, misrepresentation, fraud, breach of fiduciary duty, or violations of any federal, state or local statutes, common law, or other laws, rules or regulations, that now exist or heretofore existed, that have been or could have been asserted or alleged in the Action, or any other forum against the Noteholder Defendants and any other former director or officer of American Business and/or any subsidiary thereof (collectively, with the Noteholder Defendants, the "ABFS D&Os") or any of them whether known or unknown, directly, indirectly, representatively, derivatively or in any other capacity, which arise out of, are based upon or relate to, or are in connection with (i) the claims asserted in the Action; (ii) the purchase, roll-over or other acquisition or retention of the Notes; or (iii) any of the facts, claims, transactions, events, occurrences, acts, disclosures, statements, representations, misrepresentations, omissions or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the subject matters referred to, set forth in, or the facts, causes of action, counts or claims for relief which were, might have been, or could have been, asserted, alleged or litigated in the Action. Released Claims also include Unknown Claims.

6

(b)    "Released Parties" means each and all of the ABFS D&Os, their past or present advisors, agents, assigns, administrators, attorneys, banks or investment banks, co-insurers, consultants, employees, estates, executors, heirs, insurers, limited partners or partners, reinsurers, representatives, spouses (present and former), any entity in which any ABFS D&Os has a controlling interest, any member of an individual ABFS D&O's immediate family, or any trust of which any ABFS D&O is the settlor or which is for the benefit of any individual ABFS D&O and/or member(s) of his or her family, but not BDO.

(c)    "Unknown Claims" means any Released Claim that any Noteholder Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, that if known by him, her or it, might have affected his, her or its decision to settle and release Released Parties, or might have affected his, her or its decision not to object to this Settlement or not to exclude himself, herself or itself from the Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Final Order shall have, expressly waived the provisions, rights and benefits of any statute, rule or provision which prohibits the release of Unknown Claims, including California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

14.    **Signature** _____
                        Sign your name here                    Date Signed

## SUBSTITUTE FORM W-9

Request for Taxpayer Identification Number (TIN) and Certification

NAME: _____

Check appropriate box:

___ Individual/Sole Proprietor        ___ Pension Plan        ___ Corporation-Executor

___ Partnership        ___ Trust        ___ IRA        ___ Other

Enter TIN on appropriate line. For individuals, this is your social security number ("SSN"). For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name. You may enter either your SSN or your Employer Identification Number ("EIN"). For other entities, it is your EIN.

_ _ _ - _ _ - _ _ _ _        or        _ _ - _ _ _ _ _ _ _
Social Security Number                Employer Identification Number

NOTE: If you require instructions for Completing Substitute Form W-9, please make a written request to us at Claims Administrator, American Business Financial Services Inc. Noteholders Litigation, Heffler, Radetich & Saitta L.L.P., P.O. Box 360, Philadelphia, PA 19102. Please note that your accountant should also be able to provide you with these instructions.

15.    CERTIFICATION

UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF THE

UNITED STATES, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON

THIS FORM IS TRUE, CORRECT AND COMPLETE.

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions

of Section 3406 (a)(I)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from

backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject

8

to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S.

has notified me (us) that I am (we are) no longer subject to backup withholding.  NOTE:  If you

have been notified by the I.R.S. that you are subject to backup withholding, please strike out the

language that you are not subject to backup withholding in the certification above.

Executed this _____ day of _____, in _____,

_____,    _____
(City)                                                          (State / Country)


_____    _____
(Sign your name here)                                 Date


(Type or print your name here) _____



_____    _____
(Joint Claimant Sign your name here)              Date
(All Joint Claimants must sign)

(Type or print Joint Claimant's name here) _____


_____
Capacity of persons signing (e.g., Beneficial Owner, Executor, Administrator
or Corporate Title)

**ACCURATE CLAIMS PROCESSING TAKES A
SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1.    Please sign the above Proof of Claim and Release, and sign the Substitute W-9

      Form.

2.    Remember to attach copies of your Notes and statements from American Business

3.    Keep a copy of your Proof of Claim form for your records.

4.    Mail the form and your documents by _____.

5.    If you want proof that your Proof of Claim form was received, please send it

      Certified Mail, Return Receipt Requested.

6.    If you move after submitting your Proof of Claim form, please send your new

      address to the Claims Administrator.

malta438771                          10

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ) | |
| IN RE AMERICAN BUSINESS ) | |
| FINANCIAL SERVICES INC. ) | Master File No. 05-232 |
| NOTEHOLDERS LITIGATION ) | |
| ) | |

**Summary Notice of Proposed Class Action**
**Settlement and Settlement Hearing**

To:     All Buyers of Notes, Debentures or Money-Market Notes issued by American
        Business Financial Services, Inc. Notes between January 18, 2002 and January 20,
        2005 ("Class Members"):

YOU ARE HEREBY NOTIFIED that a settlement for $16,767,500 (the "Settlement")

has been proposed in this Federal Securities Class Action between the Class members and former

officers and directors of American Business Financial Services, Inc. ("American Business"). A

hearing will be held before the Honorable Thomas N. O'Neill, Jr. in Courtroom ____, in the

United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106, at __:____ __

.m., on _____, 2008, to determine whether the Settlement should be approved by the

Court as fair, reasonable, and adequate; to consider the proposed Plan of Allocation; to consider

applications for Class Counsel's fees and costs and reimbursement to Plaintiffs for their out-of-

pocket expenses; and  to consider any objections filed by Class Members.

If you bought or rolled over Notes of American Business on or after January 18, 2002,

you may be entitled to share in Settlement proceeds.  If you have not yet received the full printed

Notice of Proposed Settlement of Class Action, you may obtain a copy by identifying yourself as

a member of the Class and by calling toll-free: (800) 768-8450, or by writing to the Claims

Administrator:   In Re American Business Financial Services, Noteholders Litigation, c/o

Heffler, Radetich & Saitta, LLP, P.O. Box 360, Philadelphia, PA 19105-0360.  You may also

download a copy from: www.hrsclaimsadministration.com.

Further information may be obtained by directing your inquiry in writing to the Claims

Administrator.


Dated: _____, 2008          By Order of the United States District Court for the
                                       Eastern District of Pennsylvania


malta438755-008.wpd

2

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE AMERICAN BUSINESS FINANCIAL SERVICES INC. NOTEHOLDERS LITIGATION | ) ) ) ) ) |

Master File No. 05-232

## ORDER AND FINAL JUDGMENT

All capitalized terms used herein have the meanings set forth in the Settlement Agreement.

On _____, 2008, following Notice to all parties and Notice to the Class Members as described herein, a Final Hearing was held before this Court to consider: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Approval Motion"); (2) the motion for an Award of Fees and Costs to Plaintiffs' counsel ("Fees and Costs Application"); (3) the motion for the payment of Plaintiffs' Expense Awards ("Plaintiffs' Application"); and (4) Objections filed by Class Members, and Plaintiffs' Reply thereto, if any.

1.    Pursuant to those Motions, the Court must:

    a.    determine whether the terms and conditions of the Settlement Agreement dated September 12, 2008 (the "Settlement Agreement") are fair, reasonable and adequate for the settlement of all claims asserted by Lead Plaintiffs and the Class in the Amended Complaint in this Action, including the release of the Released Parties, and should be approved;

    b.    determine whether judgment should be entered dismissing the Amended Complaint on the merits and with prejudice in favor of the Noteholder Defendants and as against

1

all persons or entities who are Members of the Class herein who have not requested exclusion therefrom;

        c.      determine whether to approve the Plan of Allocation as a fair and reasonable method to allocate the Net Settlement Fund among the Class Members;

        d.      determine whether and in what amount to approve the Fees and Costs Application;

        e.      determine whether and in what amount to approve the application for Plaintiffs' Expense Awards; and

        f.      determine whether the Class Members' Objections, if any, have merit.

        2.      The Court has considered all matters submitted to it at the hearing and otherwise. It appears that a Notice of the hearing substantially in the form approved by the Court was mailed to all persons or entities reasonably identifiable, who suffered damage as a result of their purchase of Notes from American Business Financial Services, Inc. ("American Business") during the Class Period, and that a Summary Notice of the hearing substantially in the form approved by the Court was published in *USA Today* pursuant to the specifications of the Court and was also disseminated over the *PR Newswire*. The Court has considered and determined the fairness and reasonableness of the Settlement, the Plan of Allocation, the Fees and Costs Application, and the Plaintiffs' Application, and has considered all Objections of Class Members.

        NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

        3.      The Court has jurisdiction over the subject matter of the Action, the Noteholder Plaintiffs, all Class Members, and the Noteholder Defendants.

4.      The Court has previously certified a Class of all persons who suffered damage as a result of their purchase of Notes from American Business during the Class Period pursuant to Registration Statements, including prospectuses included as exhibits and all supplements thereto, that became effective on or about October 16, 2001, October 3, 2002, and November 7, 2003, respectively. Excluded from the Class are Noteholder Defendants, members of the immediate family of each of the Noteholder Defendants, any entity in which a Noteholder Defendant has a controlling interest, and the heirs of any excluded person. Also excluded from the Class are all persons whose names appear on the attached Opt-Out List, including those who previously requested exclusion from the Class, and did not withdraw that request.

5.      Pursuant to Fed. R. Civ. P. 23, Noteholder Plaintiffs, John A. Malack, Michael R. Rosati, Virgil Magnon, S.S. Rajaram, M.D., Hayward Pediatrics, Inc. have been certified as Lead Plaintiffs, and Henry Munster as a Class Representative.

6.      Notice of the proposed Settlement of class action and related matters, including Notice of the _____, 2008 Final Hearing, was mailed to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1933, and the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

7.      The Settlement is approved as fair, reasonable and adequate, and the Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement. Any Objections of Class Members to the Settlement are overruled.

8.      The Amended Complaint is hereby dismissed with prejudice and without costs, except as provided in the Settlement Agreement.

9.      On the Effective Date, the Noteholder Plaintiffs and each Class Member, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, and regardless of whether any such Noteholder Plaintiff or Class Member ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim, any distribution from the Net Settlement Fund, (i) fully, finally and forever release, relinquish, remise and discharge all claims, including, without limitation, all Released Claims, against the Released Parties, (ii) by operation of the Final Order, fully, finally, and forever release, relinquish, remise and discharge the Released Parties from all claims, including, without limitation, Released Claims, arising out of or in connection with the institution, prosecution, or assertion of the Action, (iii) covenant not to threaten, demand, or sue the Released Parties or any of them  regarding any action or proceeding of any nature with respect to the Released Claims, and (iv) are forever enjoined and barred from asserting the Released Claims, against the Released Parties or any of them in any action or proceeding of any nature, regardless of whether any such Noteholder Plaintiffs and/or each Class Member ever seeks or obtains any distribution from the Net Settlement Fund, whether or not such Noteholder Plaintiffs and/or each Class Member executed and delivered a Proof of Claim, whether or not such Noteholder Plaintiffs and/or each Class Member have filed an objection to the Settlement or to their claim being rejected as provided in this Agreement, the proposed Plan of Allocation, or any application by Plaintiffs' Counsel for an award of Attorneys' Fees and Costs and whether or not the claims of such Noteholder Plaintiffs or Class Members have been approved or allowed or such objection has been overruled by the Court.

4

10.     In accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77k(f)(2)(A) and 15 U.S.C. §78u-4(f)(7)(A)-(B), and other statutory or common law rights, the Released Parties, and each of them, are hereby fully, finally and forever released and discharged from all claims for contribution, indemnity or other federal or state law causes of action that have been brought or may be brought by any Person based upon, relating to, arising out of, or in connection with the matters alleged in the Action. Any final verdict or judgment obtained by or on behalf of any Noteholder Plaintiff or Class Member against any Person other than a Released Party relating to the Released Claims is to be reduced by the greater of (a) an amount that corresponds to the percentage of responsibility of the Released Parties for the loss to any Noteholder Plaintiff or Class Member or (b) the amount paid by or on behalf of the Released Parties to the Noteholder Plaintiffs and Class Members in connection with the Settlement.

11.     The Noteholder Plaintiffs and each Class Member, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, and regardless of whether any such Noteholder Plaintiff or Class Member ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim, any distribution from the Settlement Amount, shall not after the Effective Date seek to institute, maintain, prosecute or continue to maintain or prosecute any suit, action or other proceeding, or collect from or proceed against the Released Parties or any of them, based on the Released Claims.

12.     The Noteholder Defendants remise, release and discharge the Noteholder Plaintiffs and the Class Members and each of their estates, heirs, personal representatives, attorneys, accountants and insurers and the Class (the "Noteholder Releasees") of and from any

and all actions, causes of action, claims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations and liabilities, whether known or unknown, contingent, liquidated or unliquidated, which the Noteholder Defendants have or may have against the Noteholder Releasees arising out of, based upon or relating to the Noteholder Defendants' transactions or dealings with and/or relationships to American Business, including but not limited to any such actions, causes of action, claims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations or liabilities arising out of, based upon, or relating to the Action or the BDO Action.

13.    With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Final Order shall have, expressly waived the provisions, rights and benefits of any statute, rule or provision which prohibits the release of Unknown Claims, including California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

A Settling Party may hereafter discover facts in addition to or different from those which he, she, it or they now know or believe to be true with respect to the subject matter of the Released Claims, but the Settling Parties, upon the Effective Date, shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is alleged to be negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such

6

different or additional facts. The Settling Parties shall be deemed by operation of the Final Order to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

14.    Noteholder Plaintiffs and the Class are releasing only the Released Parties and no one else. The Noteholder Plaintiffs, on behalf of the Class, reserve and preserve in full all of their claims and actions against all other individuals and entities, including but not limited to the Noteholder Plaintiffs' claims in the BDO Action. The Noteholder Plaintiffs reserve the option and right to make claims against any and every other person or entity other than the Released Parties, including but not limited to BDO, and to assert that said other persons or entities and not the Noteholder Defendants are liable to the Noteholder Plaintiffs and the Class for the events, matters and damages alleged by the Action and the BDO Action and otherwise alleged.

15.·    Neither this Order and Final Judgment, the Settlement Agreement, nor any of its terms and provisions, or any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein:

(a)    is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Parties;

(b)    is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal;

(c)    shall constitute an adjudication or finding on the merits as to the claims of any Party and shall not be deemed to be, intended to be or construed as an admission of liability, in any way on the part of any Party or any evidence of the truth of any fact alleged or the validity of any claims that have been or could be asserted in the Action. All Parties expressly deny any

7

liability for any and all claims of any nature whatsoever; nor shall anything herein contained constitute an acknowledgment of fact, allegation or claim that has been or could have been made, nor shall any third party derive any benefit whatsoever from the statements made within this Agreement; nor

      (d) shall be construed against Noteholder Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

      16.    The Noteholder Defendants may file the Agreement and/or the Final Order in any action that may be brought against them in order to support a defense or counter claim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim

      17.    The Plan of Allocation is approved as fair and reasonable, and Lead Counsel and the Claims Administrator are directed to administer the Settlement in accordance with its terms and provisions. Any Objections to the Plan of Allocation filed by Class Members are overruled.

      18.    Plaintiffs' counsel are hereby awarded ___% of the Settlement Fund in fees, which the Court finds to be fair and reasonable, and $____ in reimbursement of expenses, which fees and expenses shall be paid to plaintiffs' Lead Counsel from the Paid Amount, with interest from the date of deposit of the Paid Amount in Citizens Bank, to the date of payment at the same rate that the Paid Amount earns. These amounts are to be paid pursuant to the procedure set forth in the Settlement Agreement. The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion and sole discretion of Plaintiffs' Lead

Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions to the prosecution of the Action. Any Objections to the Fees and Costs Application are overruled.

19.     Noteholder Plaintiffs are hereby awarded reasonable costs and expenses, pursuant to 15 U.S.C. 77z(a)(4) as follows: Virgil Magnon is awarded $_____; John Malack is awarded $____; Michael Rosati is awarded $_____; Henry Munster is awarded $____; and S.S. Rajaram M.D., Hayward Pediatrics Inc. is awarded $_____. Such amounts shall be paid from the Paid Amount. Any Objections to the Plaintiffs' Application are overruled.

20.     The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

21.     Exclusive jurisdiction is hereby retained over the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, and including the Fee Petition or any other application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the Class Members, and including any individual objections by Claimants to the rejection of their claim or to the Allocation of the Net Settlement Fund.

22.     Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

23.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Dated: Philadelphia, Pennsylvania

_____, 2008

                _____
                THOMAS N. O'NEILL, JR.
                UNITED STATES DISTRICT JUDGE

malta440957-001

9