## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE AMERICAN BUSINESS FINANCIAL SERVICES INC. NOTEHOLDERS LITIGATION | ) ) ) ) ) | Master File No. 05-232 |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR AN ORDER TO
## APPROVE DISTRIBUTION OF THE SETTLEMENT FUND

### INTRODUCTION

Plaintiffs seek leave to distribute the funds from the Settlement that this Court approved in November 2008. Plaintiffs brought suit pursuant to Sections 11, 12 and 15 of the Securities Act of 1933, 15 U.S.C.A. §77k, l, & o, on behalf of a class of persons who bought debentures or Notes (the "Notes") from American Business Financial Services, Inc. ("American Business") between January 18, 2002 and January 20, 2005 (the "Class"), and suffered damage as result of their purchases.

Plaintiffs resolved the action in the Settlement with individual defendants the Estate of Anthony Santilli, Leonard Becker, Michael DeLuca, Harold Sussman, Albert Mandia, Jerome Miller, Warren Palitz and Jeffrey Steinberg for the amount of $16,767,500[1].

On November 3, 2008, following notice to the Class, the Court conducted an extensive hearing on plaintiffs' motion for final approval of the Settlement, the Plan of Allocation, and other matters. On November 21, 2008, this Court issued an Order of Final Judgment, approving the Settlement and the Plan of Allocation, denying all objections, awarding out-of-pocket

---

[1] In the related action, *Malack v. BDO Seidman, LLP*, E.D.Pa. 08-cv-00784, on November 16, 2009, the Third Circuit granted plaintiffs' Rule 23(f) petition to appeal this Court's Order of August 3, 2009, denying class certification. Third Cir. 09-4475.

expenses to two lead plaintiffs, awarding fees and expenses to plaintiffs' counsel, and dismissing the action with prejudice.[2] The Plan of Allocation sets forth the method by which each authorized claimant's *pro rata* share of the amount remaining in the Settlement Fund after all fees, expenses and taxes have been paid ("Net Settlement Fund") is to be determined. The Court retained jurisdiction to decide any matters relating to the administration of the settlement.

The net proceeds from the Settlement were placed in escrow, where they have been earning interest. With Court approval, plaintiffs' counsel retained Heffler, Radetich & Saitta, LLP. ("Heffler"), as claims administrator, to coordinate the notice program, to process the proof of claim forms submitted by the Class members, and to distribute the Net Settlement Fund to authorized claimants. The procedures followed by Heffler in administering the settlement are set forth in the Declaration of Edward J. Sincavage in Support of Motion for Distribution of Class Settlement Funds (the "Heffler Declaration"), which is attached as Exhibit I, to the proposed Distribution Order.

Plaintiffs' counsel are now in a position to seek Court approval for the distribution of the Net Settlement Fund[3], computed as set out in Exhibit D to the Heffler Declaration, to be paid on a *pro rata* basis to each of the claimants who submitted approved claims.

The settlement administration process encountered a variety of delays. First, an unusually large proportion of the claimants are inexperienced with respect to both investing in securities and participating in class actions. As a result, many claimants submitted deficient claims. Where this occurred, it was necessary for Heffler to request additional information from

---

[2] One objector appealed the Court's November 21, 2008 Order to the Third Circuit. That appeal was dismissed on June 3, 2009.

[3] As of January 18, 2010, the Net Settlement Fund (after payment of Court-approved fees and expenses, lead plaintiffs' awards, settlement administrative expenses to date, estimated future settlement administration expenses, and estimated taxes, and including estimated interest) had a value of approximately $11,809,882.14. Further interest will be earned until the date of distribution. See Exhibit D to the Heffler Declaration.

the claimants.  Heffler Declaration ¶¶4 & 5.  In a number of cases, the claimants did not have the

required information readily available, or the information was not consistent with the records of

the Trustee in Bankruptcy with respect to the Estate of American Business (the "Trustee in

Bankruptcy").  *Id.* ¶4.  Second, special difficulties arose from the submission of millions of

dollars of claims by investment firms that purchased assignments of claims from members of the

Class. It was necessary for Heffler and plaintiffs' counsel to examine carefully these claims, and

then to negotiate with the assignees to determine the extent to which, if at all, their claims should

be approved.  *Id.* ¶¶11 & 12.  Third, numerous claims were submitted months late, well past the

Court-approved deadline for the submission of claims. *Id.* ¶7  With respect to these late-filed

claims, Heffler and plaintiffs' counsel attempted to strike a balance between recommending

approval of all valid claims, whenever submitted, and wrapping up the claims administration

process as rapidly as possible. *Id.*

Throughout this process, Heffler and plaintiffs' counsel were focused on fairness not just

to individual claimants, but also to the entire community of Class members who submitted valid

claims.  Effort expended with respect to particular deficient claims often led to further expense

and delay, potentially harming the interests of all valid claimants.  On the other hand, legitimate

claims, even insufficient, incomplete or late-filed, had to be processed in a deliberate, fair

manner.  In addition, Heffler and plaintiffs' counsel wished to resolve all possible disputes

regarding individual claims in order to reduce the issues that must be resolved by this Court, and

also to attempt to eliminate the possibility that any claimant would seek to appeal the denial of

his, her or its claim, which could materially delay distribution, to the detriment of all valid

claimants.  To date, Heffler and plaintiffs' counsel appear to have successfully resolved all

disputes concerning the denial of claims. *Id.* ¶¶6, 11.  In each case, either Heffler reached a

compromise with claimants whose claims were rejected in whole or in part, or claimants whose claims were rejected in whole or in part did not object following notice of such rejection, or following an explanation from Heffler.

As a result of this process, Heffler and plaintiffs' counsel have approved claims, subject to this Court's review, in the aggregate amount of $365,324,525.29.  As noted, the Net Settlement Fund is approximately $11,809,882.14.  Accordingly, it is anticipated that each valid claimant will be paid approximately 3.2 percent of his, her or its approved claim.

## A.  SUMMARY OF THE PAYABLE AND NON-PAYABLE CLAIMS

Attached as Exhibit A to the Heffler Declaration is the  list of Payable Claims as of January 18, 2010, showing payable and partially payable claims received, including the name of each claimant, the amount claimed, the amount disallowed and the amount allowed, and, if applicable, a coded comment denoting the reason for partial rejection of the claim.

As of January 18, 2010, Heffler had received and processed 14,536 proof of claim forms in accordance with the terms of the settlement and guidelines provided to Heffler by plaintiffs' counsel.  Heffler Declaration ¶7, and Exhibit A.  Of the 14,536 claims received, Heffler has found the claims of 13,796 claimants to be valid or partially valid.  See Heffler Declaration ¶8. The identity of each valid claimant and the amount of each claimant's approved recognized losses are listed in Exhibit A to the Heffler Declaration.  The total amount of recognized losses for the 13,796 valid claims is $365,324,525.29.  Heffler Declaration ¶8.

Heffler recommends rejection of the claims of 740 claimants for the following reasons:

a.      Claimant failed to provide proof of his, her or its Notes, and the Trustee in Bankruptcy's data did not contain confirmation of the claim;

b.      Claimant did not provide supporting documentation to prove the purchase or
        rollover of Notes between January 18, 2002 and January 20, 2005, inclusive;

c.      Claimant did not own Notes on January 21, 2005;

d.      Claimant filed for preferred stock, rather than Notes;

e.      Claimant filed for Notes he, she or it had sold and assigned to another entity; and

f.      Claimant filed a duplicate proof of claim and release.

Heffler Declaration ¶10. See list of Non Payable Claims, Exhibit B to Heffler Declaration.

Following initial processing of the proofs of claim, Heffler sent deficiency letters to
claimants whose claims were in any way deficient, requesting that these claimants correct the
deficiencies in their claims within 20 days. Heffler Declaration ¶4. After the 20 days, Heffler
sent final letters to those whose claims continued to be deficient. Heffler Declaration ¶5.
Likewise, Heffler sent letters to those whose claims were recommended for rejection, allowing
20 days for response. Heffler Declaration ¶6. At the end of this process, to Heffler's and
counsel's knowledge, none of those whose claims were rejected or partially rejected is contesting
the rejection or partial rejection of his, her or its claims. *Id.* Accordingly, plaintiffs request that
the Non-Payable Claims listed in Exhibit B to the Heffler Declaration be rejected.

Heffler received claims from three assignees of the Notes, SPCP Group, LLC ("SPCP"),
Sierra Liquidity Fund, LLC ("Sierra") and Hain Capital ("Hain") (the "Assignees"). The
Assignees bought Notes from Class members, who assigned to them all rights in any litigation
concerning the Notes. Heffler Declaration ¶¶11 & 12. In many cases, the assignor Class
members filed individual proofs of claim, even though they had previously assigned those claims
to one of the Assignees.

After consultation with counsel, Heffler rejected Sierra's claims entirely, because Sierra could not establish that its assignors had bought or rolled over their Notes during the Class Period; because the Notes for which Sierra filed its claims were senior collateralized Notes, which had been obtained by exchange rather than purchase; because some Notes had been claimed by the assigning Noteholders; and because Sierra filed a group of claims almost a year late. Sierra was given notice of its rejection, and, though given an opportunity to respond, did not do so. Heffler Declaration ¶11.

Both Hain and SPCP bought unsecured Notes as well as senior collateralized Notes. In some cases, Hain and SPCP did not supply the date of purchase. Heffler initially rejected the claims of both SPCP and Hain, for reasons similar to the rejection of Sierra's claims. When Hain and SPCP questioned the rejections, plaintiffs' counsel negotiated settlements with both companies. SPCP settled for a total of $9,997,962.34 of recognized claims, against its claimed $15,189,651.92. Hain settled for a total of $1,249,199.14 of recognized claims, against its claimed $3,569,140.41. Heffler then rejected all individual claims of Class members who had sold and assigned their claims to SPCP or Hain. Heffler Declaration ¶12. None of these Class members has objected to his or her rejection after over 20 days. Counsel believe that these issues have been handled fairly and in the best interests of the Class, and request approval from the Court.

## B. <u>REQUEST FOR APPROVAL OF LATE CLAIMS</u>

Of the proofs of claims received in the Settlement, as of January 18, 2010, 697 claims were postmarked after January 2, 2008, the deadline for filing claims. Heffler Declaration ¶8. Of the 697 late-filed claims, Heffler deemed 624 to be valid. *Id.* ¶9.

Counsel for plaintiffs believe that it would be fair, reasonable and in the interest of justice to allow late claims, where otherwise valid, to be eligible to share in the Net Settlement Fund. (Each late claim has been tentatively approved or partially rejected or rejected and listed in Exhibit A or B to the Heffler Declaration following the same guidelines applied to the timely claims.) Heffler Declaration ¶9. Plaintiffs request that the 624 late claimants with valid claims of $19,877,243.75 be allowed to participate in the distribution of the Net Settlement Fund as if their claims had been timely filed. *Id.*

## C. REQUEST FOR APPROVAL OF THE HEFFLER FIRM'S SUMMARY REPORT, HEFFLER'S FEES AND COSTS, AND DISTRIBUTION TO AUTHORIZED CLAIMANTS

### 1.   Approval of Accepted and Rejected Claims

Plaintiffs request that the Court approve each claim in the amount listed in the Payable Claims list. *See* Ex. A to the Heffler Declaration. Likewise, plaintiffs request that this Court reject each claim that Heffler has tentatively rejected. *See* Non-Payable Claims list, Exhibit B to the Heffler Declaration.

### 2.   Approval of Heffler's Fees and Costs

Heffler has been paid $338,458.33 in fees and costs from the Settlement Fund in connection with claims administration of this Settlement. Heffler Declaration ¶16. Additional fees of $57,042.50 and costs of $2,607.65 in connection with settlement administration have been incurred but not paid to Heffler. Exhibit C to Heffler Declaration. Heffler incurred, *inter alia*, fees for sending out the Notice, handling correspondence, processing each claim, identifying deficient or rejected claims and notifying such claimants, and communications with claimants. Costs included postage, photocopies, telephone costs and supplies. With respect to anticipated future fees and expenses, Heffler seeks $19,750.00 for estimated additional fees for

7

distribution and tax preparation, and $9,810 in estimated additional costs for distribution and

post-distribution expenses, including postage, checks, envelopes, printing, shipping, and

miscellaneous costs.  Heffler's invoice and summary of presently owed fees and costs, and

estimated future fees and costs, is attached as Exhibit C to the Heffler Declaration.  The total of

all of the fees and costs, paid and unpaid, already-incurred and future, as listed above, is

$427,668.48.  Heffler Declaration ¶16.  Plaintiffs request that the Court approve the payments

already made to Heffler and payments to be made to Heffler from the Settlement Fund, as shown

on Heffler's invoice, Exhibit C to the Heffler Declaration.

Plaintiffs' counsel seek no additional attorneys' fees or costs.

### 3.    Approval of Distribution of Net Settlement Fund

Heffler, under the direction of plaintiffs' counsel, intends to distribute the Net Settlement

Fund promptly after the proposed Distribution Order becomes final.  Heffler estimates that, with

accrued interest and the payment of fees, taxes and expenses as described in this Memorandum,

the Net Settlement Fund will have a net value of approximately $11,809,882.14.   Exhibit D to

the Heffler Declaration.  Additional interest will continue to accrue until distribution is made.

Plaintiffs request that the Court approve distribution of the Net Settlement Fund, *pro rata*, to the

authorized claimants with Payable Claims.  Each authorized claimant will receive approximately

3.2% of their Payable Claim amount.

### 4.    Approval of Donating Unclaimed Funds to Charitable Organizations

Plaintiffs request the Court to find that 220 days after the initial distribution of the Net

Settlement Fund to authorized claimants, after appropriate efforts to locate and distribute funds

to the authorized claimants, and after payment of any additional administrative expenses, it will

be appropriate to distribute any unclaimed monies remaining in the Net Settlement Fund to a

non-profit, charitable organization or organizations selected by plaintiffs' counsel.  If this request

is granted, any unclaimed monies remaining in the Net Settlement Fund 220 days after the initial

distribution to the authorized claimants would be so distributed.

## D.  REQUEST FOR DISPOSITION OF ADMINISTRATOR'S RECORDS

Plaintiffs also request the Court to find that, 365 days after the initial distribution of the

Net Settlement Fund to authorized claimants, it will be appropriate for Heffler to destroy all

claims forms and related correspondence.  Heffler should be ordered to retain all administrative

records, including their copy of the claimants listings, Exhibits A & B and their computer

database used to create the listings for a period of three years after the initial distribution of the

Net Settlement fund to Authorized Claimants.

## E.  REQUEST FOR RELEASE AND DISCHARGE OF THOSE INVOLVED WITH CLAIMS PROCESSING

Finally, plaintiffs request that the Court release and discharge all persons who have been

involved with claims processing and payment, including Heffler, plaintiffs, plaintiffs' counsel,

and anyone else with responsibility to process and make the claims payments.  Plaintiffs request

that the Court bar any claimant or Class member, whether or not he or she received a payment,

from making any further claim against the Settlement Fund or any of the persons released above,

pursuant to the detailed releases in the Settlement Agreement, the Proof of Claim and Release

form, and the Court's final Order of November 21, 2008.

## CONCLUSION

Plaintiffs' counsel respectfully request that the Court enter the proposed Distribution

Order to allow the costs and expenses of settlement administration

to be paid and/or reserved and then permit distribution of the Net Settlement Fund *pro rata* to the

authorized claimants shown on Exhibit A to the Heffler Declaration.


Dated:  January 21, 2010                          /s/ TODD S. COLLINS

Todd S. Collins (TSC4390, I.D. No. 29405)
Elizabeth W. Fox (EWF6692, I.D. No. 33456)
Neil F. Mara
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-5715
tcollins@bm.net


THE NICHOLAS J. GUILIANO LAW FIRM
Nicholas J. Guiliano
1500 Walnut Street, Suite 1100
Philadelphia, PA 19102
Telephone:  215-413-8223
Facsimile:  215-413-8225
njgesq@aol.com

FARUQI & FARUQI, LLP
Jacob A. Goldberg
2600 Philmon Ave., Suite 324
Huntington Valley, PA 19006
(215) 914-2460
jgoldberg@faruqilaw.com

KLAFTER & OLSEN
Kurt B. Olsen
Jeffrey A. Klafter
2121 K St., N.W.
Suite 800
Washington, D.C.  20037
(202) 261-3553
ko@klafterolsen.com

malta506003-005

11